60 F.3d 1071
 64 USLW 2090, Prod.Liab.Rep. (CCH) P 14,291
 Susan SHADBURNE-VINTON, Plaintiff-Appellant,
and
William G. Vinton, Plaintiff,
v.
DALKON SHIELD CLAIMANTS TRUST, Defendant-Appellee.
Oregon Trial Lawyers Association; Pharmaceutical Research
and Manufacturers of America; The American
Insurance Association, Amici Curiae.
 No. 94-1820.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 6, 1995.
Decided July 26, 1995.
 
 ARGUED: Michael Albert Pretl, Pretl & Erwin, P.A., Baltimore, MD, for appellant. Dino Santo Sangiamo, Venable, Baetjer & Howard, Baltimore, MD, for appellee. ON BRIEF: Paul F. Strain, Elizabeth C. Honeywell, Venable, Baetjer & Howard, Baltimore, MD, for appellee. Arthur C. Johnson, Douglas C. Schaller, Johnson, Clifton, Larson & Corson, P.C., Eugene, OR, for amicus curiae Oregon Trial Lawyers; Bruce J. Brennan, Marjorie E. Powell, Washington, DC, for amicus curiae Pharmaceutical Research; Robert E. Scott, Jr., Christopher W. Poverman, Semmes, Bowen & Semmes, Baltimore, MD, for amicus curiae Ins. Ass'n.
 Before RUSSELL and WIDENER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 Reversed by published opinion. Senior Judge CHAPMAN wrote the opinion, in which Judge RUSSELL joins. Judge WIDENER wrote a dissenting opinion.
 OPINION
 CHAPMAN, Senior Circuit Judge:
 
 
 1
 Appellant Susan Shadburne-Vinton ("Shadburne") was injured by a Dalkon Shield Intrauterine Device ("IUD") manufactured by A.H. Robins Company ("Robins") that she used from March, 1974 until December, 1976. She filed suit against Robins in January, 1983 in the United States District Court for the District of Maryland. Because Shadburne was an Oregon resident, Oregon law controlled, and the district court dismissed her suit under the Oregon statute of repose for failure to timely file. Shadburne appealed the dismissal; however, pending the appeal, Robins entered bankruptcy proceedings, and the bankruptcy court stayed all Dalkon Shield litigation. During the pendency of the bankruptcy proceedings, the Oregon legislature amended the statute of repose to exclude IUD manufacturers as a protected class of defendants.
 
 
 2
 Following the conclusion of the Robins bankruptcy proceedings in 1989, Shadburne sought to reinstate her initial claim. The Dalkon Shield Claimants Trust ("the Trust," substituted for Robins pursuant to reorganization) agreed to reinstatement, but reserved the right to challenge the amendment to Oregon's statute of repose. The Trust moved for judgment on the pleadings claiming that the amendment violated its due process rights and claiming that the original statute of repose governed Shadburne's suit. On May 19, 1994, the district court granted the Trust's motion, and Shadburne appeals.
 
 
 3
 For the reasons discussed below, we reverse the district court's ruling.
 
 I.
 
 4
 Shadburne received her first IUD in February, 1973 which was replaced by a second IUD in March, 1974. After an acute episode of pelvic inflammatory disease, the doctor surgically removed the IUD in December, 1976. Shadburne, along with many other plaintiffs, filed suit in Maryland district court[1] against Robins claiming that the IUD rendered her infertile and caused multiple sclerosis. Because Shadburne and the other plaintiffs were Oregon residents, Oregon's substantive law controlled. Robins moved for judgment on the pleadings on the basis of Oregon's original statute of repose which provided that "a product liability civil action shall be commenced not later than eight years after the date on which the product was first purchased for use or consumption." Or.Rev.Stat. Sec. 30.905(1) (1983) (current version at Or.Rev.Stat. Sec. 30.905(1) (1993)). On December 20, 1984, the district court granted Robins's motion finding that Shadburne filed suit more than eight years after she purchased the IUD. Shadburne and 41 other dismissed plaintiffs appealed.
 
 
 5
 During the pendency of the appeal, Robins filed for bankruptcy, and the bankruptcy court stayed all Dalkon Shield litigation. In 1987, while the bankruptcy proceedings continued, the Oregon legislature amended the statute of repose to exclude IUD manufacturers[2] as protected defendants. 1987 Or.Laws ch. 4 Secs. 5-10. Section 5 applied a two year discovery rule statute of limitations without the eight year repose feature, and section 6 made this rule applicable to all causes of action tried after the statute's effective date. Section 7 described a limitation of July 1, 1989, for filing such actions, and Sections 8 and 9 established a one year period for refiling actions that were dismissed based upon the prior statute, or to be first commenced within one year after the statute's effective date. Because the Robins bankruptcy proceeding was still not resolved in 1989, the Oregon legislature extended the filing period set forth in the 1987 legislation to actions filed before July 1, 1995. 1989 Or.Laws ch. 642 Sec. 1.[3] (The 1987 and 1989 statutes are referred to collectively as the "Special IUD Statute.")[4]
 
 
 6
 When the Robins bankruptcy proceeding was not concluded by 1989, Shadburne and the Oregon plaintiffs secured a consent order from the bankruptcy court which tolled the time for filing suit under the Special IUD Statute until 30 days after the expiration or termination of the automatic stay.
 
 
 7
 Many of the other Oregon plaintiffs settled their disputes with the Trust. When the lead appellant, Ada June Tolliver, settled her claim, the Fourth Circuit erroneously dismissed the entire appeal, intending only to dismiss Tolliver's appeal. Shadburne did not file a motion for reconsideration to correct the clerical error and keep her case alive. Shadburne claims that she did not pursue the appeal of her earlier dismissal because she deemed the appeal mooted by the Special IUD Statute and the consent order.
 
 
 8
 Because the parties could not agree to a settlement, the bankruptcy court certified Shadburne's claim, and she filed an amended complaint in the district court on October 27, 1992. The Trust filed a motion for judgment on the pleadings on June 25, 1993, claiming that the Special IUD Statute was unconstitutional, and that under the original statute of repose, Shadburne's claim was properly dismissed. The district court granted the Trust's motion finding that the Special IUD Statute violated the Trust's due process rights under the Federal Constitution, and that the original statute of repose barred Shadburne's claim. Shadburne appeals arguing that the Oregon statute does not violate the Federal Constitution.
 
 
 9
 We review questions of law de novo. Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768-69 (4th Cir.1991), cert. denied, 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992).
 
 II.
 
 10
 The district court found that retroactive enlargement of a statute of limitation does not violate the Due Process Clause of the Constitution, Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945), yet retroactive enlargement of a statute of repose does. William Danzer & Co. v. Gulf & Ship Island R.R., 268 U.S. 633, 45 S.Ct. 612, 69 L.Ed. 467 (1925). The district court relied primarily upon a Fourth Circuit case that distinguishes statutes of limitation from statutes of repose because the former involve only procedural rights, while the latter involve substantive rights. Goad v. Celotex Corp., 831 F.2d 508 (4th Cir.1987), cert. denied, 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 906 (1988). We find Goad inapplicable because it separates statutes of limitation from statutes of repose for choice of law purposes, and this case presents a constitutional issue. We find that in analyzing the constitutionality of retroactive legislation, statutes of repose are now treated the same as statutes of limitation.
 
 III.
 
 11
 The Trust relies primarily upon William Danzer & Co. v. Gulf & Ship Island R.R., 268 U.S. 633, 45 S.Ct. 612, 69 L.Ed. 467 (1925), in which the plaintiff failed to file suit against a railroad within the time prescribed by the Interstate Commerce Act, which both created and limited the plaintiff's cause of action. Congress then enacted the Transportation Act which, if applied retroactively, would revive the plaintiff's claim. The railroad argued that reviving the plaintiff's expired cause of action violated its due process rights. The Court found "that the lapse of time not only barred the remedy but also destroyed the liability of defendant to plaintiff." William Danzer & Co., 268 U.S. at 636, 45 S.Ct. at 613 (citing Kansas City S. Ry. v. Wolf, 261 U.S. 133, 139, 43 S.Ct. 259, 260, 67 L.Ed. 571 (1923); U.S. ex rel. Louisville Cement Co. v. Interstate Commerce Comm'n, 246 U.S. 638, 642, 38 S.Ct. 408, 409, 62 L.Ed. 914 (1918); A.J. Phillips Co. v. Grand Trunk W. R.R., 236 U.S. 662, 666, 35 S.Ct. 444, 445, 59 L.Ed. 774 (1915)). The Court further noted that statutes are presumed to be prospective unless the statute expressly states otherwise,[5] and that it had recently held that the Transportation Act would not apply to causes of action which were barred by a state statute of limitations before the passage of the Act. Id. (citing Fullerton-Krueger Lumber Co. v. Northern Pac. Ry., 266 U.S. 435, 437, 45 S.Ct. 143, 143-44, 69 L.Ed. 367 (1925)). The Court held that sometimes a statute both creates a cause of action and places a limitation period on its existence, and the limitation period in such statutes serve as a limitation upon liability. The Court concluded that the expiration of the time period extinguished the defendant's liability, and to revive that liability would deprive the defendant of its property without due process of law. Id. at 637, 45 S.Ct. at 613.
 
 
 12
 The Supreme Court subsequently held in Chase Securities Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945), that retroactive application of a statute of limitation does not violate the Due Process Clause of the Fourteenth Amendment. The Chase Court distinguished Danzer in a footnote by noting that the statute in that case affected the defendant's liability; whereas, in Chase the statutes merely affected the plaintiff's remedy. The challenged statute of limitation neither conferred on plaintiff a new right nor subjected defendant to a new liability. Chase Sec. Corp., 325 U.S. at 312 n.8, 65 S.Ct. at 1141 n.8. The Court relied primarily upon its previous decision in Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885), in which it held that
 
 
 13
 where lapse of time has not invested a party with title to real or personal property, a state legislature, consistently with the Fourteenth Amendment, may repeal or extend a statute of limitations, even after right of action is barred thereby, restore to the plaintiff his remedy, and divest the defendant of the statutory bar.
 
 
 14
 Chase Sec. Corp., 325 U.S. at 311-12, 65 S.Ct. at 1141. The Court noted that Campbell established "that statutes of limitation go to matters of remedy, not to destruction of fundamental rights." Id. at 314, 65 S.Ct. at 1142.
 
 
 15
 The district court found the Oregon statute of repose unconstitutional based upon Danzer, Chase, Campbell, and the Fourth Circuit's decision in Goad. The Goad court examined the differences between statutes of limitation and statutes of repose.
 
 
 16
 Statutes of limitation ... are primarily instruments of public policy and of court management, and do not confer upon defendants any right to be free from liability, although this may be their effect.
 
 
 17
 In contrast to statutes of limitation, statutes of repose serve primarily to relieve potential defendants from anxiety over liability for acts committed long ago. Statutes of repose make the filing of suit within a specified time a substantive part of plaintiff's cause of action. In other words, where a statute of repose has been enacted, the time for filing suit is engrafted onto a substantive right created by law. The distinction between statutes of limitation and statues of repose corresponds to the distinction between procedural and substantive laws.
 
 
 18
 Goad, 831 F.2d at 510-11 (footnotes and citation omitted). Although Goad delineates the differences between statutes of limitation and statutes of repose, those distinctions are not relevant for purposes of our inquiry in the present case because Goad involved choice of law principles, and in that context the distinction between procedural and substantive laws is critical in determining which state's law applies. However, in the present case we are called upon to determine the constitutionality of a state statute, and we must employ a different analysis.
 
 
 19
 While Danzer and the line of cases discussed above analyzed the constitutionality of retroactive time bar statutes by drawing the substance versus procedure distinction, a more recent line of Supreme Court cases commands us to employ a different analysis. First, in Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), the Court rejected appellant's due process challenge to legislation creating a new liability upon coal mine operators for illnesses to miners for work done long before the legislation. The Court recognized:
 
 
 20
 It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.
 
 
 21
 ... [O]ur cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. This is true even though the effect of the legislation is to impose a new duty or liability based on past acts.
 
 
 22
 Id. at 15-16, 96 S.Ct. at 2892-93 (citations omitted). The Usery Court concluded that the retroactive legislation comported with the requirements of due process.
 
 
 23
 Next, in Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984), the Supreme Court upheld a statute imposing liability on employers for withdrawal from pension plans even though the statute applied to employers who withdrew before the enactment of the statute. Relying upon Usery, the Court held that legislation imposing liabilities retroactively must only be supported by a rational legislative purpose. Id. at 728-30, 104 S.Ct. at 2717-18.
 
 
 24
 Finally, in General Motors Corp. v. Romein, the Court held that in order for retroactive state legislation to comport with the requirements of due process under the Fifth Amendment, it must serve a legitimate legislative purpose that is furthered by rational means. 503 U.S. 181, 191, 112 S.Ct. 1105, 1112, 117 L.Ed.2d 328 (1992) (citing Pension Benefit Guar. Corp., 467 U.S. at 730, 104 S.Ct. at 2718).
 
 
 25
 Turner Elkhorn and Pension Benefit both involved federal statutes, and Romein involved a state statute. Thus, the three cases together stand for the proposition that the Due Process Clause of the Fifth Amendment allows retroactive application of either federal or state statutes as long as the statute serves a legitimate legislative purpose that is furthered by rational means. We reject the district court's inference that Turner Elkhorn and Pension Benefit only apply to federal statutes involving national economic policy. While courts might accord a stronger deference to legislation affecting national economic policy, that does not suggest that a different constitutional analysis applies to non-economic legislation. Courts apply the rational basis test when reviewing the constitutionality of retroactive legislation in general, but the legislative deference may vary.
 
 
 26
 In light of this more recent Supreme Court precedent, we find that the analysis used by the Court in Danzer, Chase, and Campbell is outdated and no longer valid for purposes of analyzing the constitutionality of retroactive legislation. The relevant inquiry is whether or not the legislation serves a legitimate legislative purpose that is furthered by rational means. In fact, the Fourth Circuit applied the reasoning of Turner Elkhorn in United States v. Monsanto Co., 858 F.2d 160, 174 (4th Cir.1988), cert. denied, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989), in determining that retroactive application of CERCLA's liability provisions does not run afoul of the Supreme Court's test for due process validity.
 
 
 27
 Our sister circuit recently considered whether retroactive application of a statute of repose violates a defendant's due process rights in Wesley Theological Seminary v. United States Gypsum Co., 876 F.2d 119 (D.C.Cir.1989), cert. denied, 494 U.S. 1003, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990), and we follow the reasoning of the Wesley court. In that case, the defendant claimed that the ten year statute of repose barred the plaintiff's suit; however, while the case was pending, the legislature amended the statute making it inapplicable to manufacturers such as the defendant. The defendant argued that the earlier statute conferred upon it a substantive right not to be sued, and that retroactive application of the amended statute of repose violated its due process rights.
 
 
 28
 Relying upon Turner Elkhorn and Pension Benefit, the D.C. Circuit reasoned that retroactive application of the amended statute did not violate the defendant's due process rights if it served a rational legislative purpose. Id. at 122-23. The Wesley court noted that "any substance/procedure dichotomy suggested by Chase is either completely defunct or, at the very most, establishes procedural rules as a safe harbor within which a legislature may freely make retroactive changes." Id. at 122. The Wesley court stated that Turner Elkhorn and Pension Benefit followed Justice Holmes's view that legislative bodies are vested with a certain amount of leeway in establishing laws. As Chief Justice of Massachusetts, Justice Holmes wrote:
 
 
 29
 [M]ultitudes of cases have recognized the power of the Legislature to call a liability into being where there was none before, if the circumstances were such as to appeal with some strength to the prevailing views of justice, and if the obstacle in the way of the creation seemed small.
 
 
 30
 Danforth v. Groton Water Co., 178 Mass. 472, 59 N.E. 1033, 1034 (1901), quoted in Wesley, 876 F.2d at 121.
 
 
 31
 In predicting that the Fourth Circuit would not follow the D.C. Circuit's opinion in Wesley, the district court relied upon Link v. Receivers of Seaboard Air Line Railway, 73 F.2d 149 (4th Cir.1934), and Dinh v. Rust International Corp., 974 F.2d 500 (4th Cir.1992). We find both of these cases inapplicable in resolving the constitutional issue before us.
 
 
 32
 The statute in Link provided that personal injury judgments against railroads took priority over any mortgage payments owed by the railroad as long as the personal injury plaintiff filed suit within twelve months of the injury. Link filed his suit eighteen months after his injury; however, while his appeal was pending, the legislature amended the statute to allow personal injury plaintiffs two years in which to file suit. Link argued that the amended statute applied in his case giving his judgment priority. The court held that application of the amendment to pending suits violated the railroad's due process rights because once the twelve month period expired, the plaintiff's personal injury judgment lost priority over the railroad's mortgages. The court determined that the legislature could not revive a substantive right already lost by the plaintiff. Link, 73 F.2d at 152. The court also noted that the legislature did not intend for the amendment to apply retroactively. Id. at 151.
 
 
 33
 We find Link inapplicable in the present case because the Fourth Circuit decided that case in 1934 and, as discussed above, the Supreme Court has since made substantial changes in this area of the law. Link is based upon the same outdated principles upon which Danzer is based.
 
 
 34
 The district court's reliance upon Dinh is misplaced because in that case the appellant agreed that the statute of repose created substantive rights in the defendant which once vested could not be legislatively destroyed. Dinh, 974 F.2d at 501. Because the issue was not contested, it was not before the court.
 
 
 35
 The Trust relies upon School Board of Norfolk v. United States Gypsum Co., 234 Va. 32, 360 S.E.2d 325 (1987), in which the court found that retroactive application of a statute of repose violated the defendant's due process rights under the Virginia Constitution. Because the court decided United States Gypsum Co. under Virginia's Constitution, not the Federal Constitution, and because states are free to interpret their constitutions under a stricter standard than the federal courts interpret the Federal Constitution, we find United States Gypsum Co. inapplicable here.
 
 
 36
 The Trust also relies upon Colony Hill Condominium I Ass'n v. Colony Co., 70 N.C.App. 390, 320 S.E.2d 273 (1984), review denied, 312 N.C. 796, 325 S.E.2d 485 (1985), in which the court held that a statute of repose provided the defendant with a vested right not to be sued and reviving a liability already extinguished violated the defendant's due process rights. As a state appellate decision, Colony Hill is not binding authority on this court, and we decline to follow it because it does not recognize the recent changes in this area of the law triggered by the Supreme Court's decisions in Turner Elkhorn and Pension Benefit.
 
 
 37
 The recent developments in the law require us to apply the rational basis test in determining whether retroactive legislation violates the Due Process Clause of the Fifth Amendment. For purposes of constitutional analysis, the same test applies regardless of whether the statute at issue is one of repose or one of limitation.
 
 
 38
 Next, we must determine whether the Oregon statute of repose, which expressly states that it applies retroactively, serves a legitimate legislative purpose that is furthered by rational means. After extensive hearings on the legislation, the Oregon legislature determined that retroactive application of the Special IUD Statute was fair and equitable to all parties involved. Because many of the women suffered injuries from the IUD in the early to mid 1970s, and the link between the IUD and the injuries it caused was not discovered until the early 1980s, the unamended statute of repose barred the claims of many women. The Oregon Legislature determined that the Special IUD Statute was necessary to provide these claimants with a fair opportunity to litigate their claims. We find that the Special IUD statute does not violate the Due Process Clause of the Fifth Amendment because it is rationally related to a legitimate legislative purpose.
 
 
 39
 For the foregoing reasons, the opinion of the district court is
 
 
 40
 REVERSED.
 
 WIDENER, Circuit Judge, dissenting:
 
 41
 I respectfully dissent.
 
 
 42
 I would affirm on the opinion of the district court, the pertinent part of which opinion is copied below and which I adopt as my own. I would consider any of its particular language altered only enough to fit the changed circumstances of its use by me.
 
 
 43
 * * *
 
 
 44
 Although the constitutional impediments to expressly retroactive legislation are "of limited scope," such legislation will not pass constitutional muster if it runs afoul of the Fourteenth Amendment by depriving a person of life, liberty, or property without due process of law. See Landgraf v. USI Film Products, --- U.S. ----, ---- - ----, 114 S.Ct. 1483, 1497-99, 128 L.Ed.2d 229 (1994). It is undisputed that a legislature may in certain instances retroactively enlarge a statute of limitations without violating the Constitution. International Union of Electrical, etc. v. Robbins & Myers, Inc., 429 U.S. 229, 243, 97 S.Ct. 441, 450, 50 L.Ed.2d 427 (1976); Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 311-12, 65 S.Ct. 1137, 1140-42, 89 L.Ed. 1628 (1945); Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885).[1] Retroactive enlargement in such a situation is unproblematic because "statutes of limitation go to matters of remedy, not to destruction of fundamental rights." Chase, 325 U.S. at 314, 65 S.Ct. at 1142. However, "where a statute in creating a liability also put[s] a period to its existence, a retroactive extension of the period after its expiration amount[s] to a taking of property without due process of law." Id., at 311 n.8, 65 S.Ct. at 1141 n.8 (citing William Danzer Co. v. Gulf & Ship Island R.R. Co., 268 U.S. 633, 636-37, 45 S.Ct. 612, 613, 69 L.Ed. 467 (1925)). In Danzer, the Supreme Court refused to permit a plaintiff who failed to file timely under a two-year federal limitations period to take advantage of a later statute permitting suspension of the timeliness requirement in certain circumstances. The original statute had been previously determined, in other cases, to constitute not only a bar to a remedy, but also a destruction of defendant's liability to plaintiff. 268 U.S. at 636, 45 S.Ct. at 613. Therefore, upon expiration of the two-year period for filing, "it was as if liability had never existed." Id. Thus by virtue of Chase and Danzer, the Supreme Court has distinguished between retroactive enlargement of statutes which effect only remedy and those which effect liability, upholding the former while refusing to uphold the latter.
 
 
 45
 As both parties agree, the statute which has been retroactively enlarged in this case, ORS 30.905, is a statute of repose. Unlike a statute of limitations which generally runs from the time a cause of action accrues, the statute of repose in this case runs from the date the product was first purchased. As Judge Northrop explained in Pottratz, "this statute does not operate to bar a remedy; it prevents a cause of action from ever arising." 588 F.Supp. at 952. In other words, injury which occurs more than eight years after the product is purchased, " 'forms no basis for recovery. The injured party literally has no cause of action.' " Id. (quoting President and Directors of Georgetown College v. Madden, 505 F.Supp. 557, 573 (D.Md.1980), aff'd in part and appeal dismissed in part, 660 F.2d 91 (4th Cir.1981)). The policies identified by Judge Northrop which underlay a statute of repose are "first, that there is a lack of reliability and availability of evidence after a lapse of a long period of time and secondly, that people are entitled to plan their affairs with certainty, free from the disruptive burden of protracted and unknown potential liability." Id. at 953 (citing Johnson v. Star Machinery Co., 270 Or. 694, 530 P.2d 53 (1974)).
 
 
 46
 The Fourth Circuit has explained the differences between statutes of limitation, which are procedural, and statutes of repose, which are substantive.
 
 
 47
 "Statutes of limitation ... are primarily instruments of public policy and of court management, and do not confer upon defendants any right to be free from liability, although this may be their effect.
 
 
 48
 In contrast to statutes of limitation, statutes of repose serve primarily to relieve potential defendants from anxiety over liability for acts committed long ago. Statutes of repose make the filing of suit within a specified time a substantive part of plaintiff's cause of action.... In other words, where a statute of repose has been enacted, the time for filing suit is engrafted onto a substantive right created by law. The distinction between statutes of limitation and statutes of repose corresponds to the distinction between procedural and substantive laws. Statutes of repose are meant to be 'a substantive definition of rights as distinguished from a procedural limitation on the remedy used to enforce rights.' "
 
 
 49
 Goad v. Celotex Corp., 831 F.2d 508, 511 (4th Cir.1987) (footnotes omitted) (emphasis added) (citing Bolick v. American Barmag Corp., 306 N.C. 364, 293 S.E.2d 415, 418 (1982)), cert. denied, 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 906 (1988).
 
 
 50
 Danzer has never been overruled by the Supreme Court; rather later cases such as Chase and Robbins & Myers are testament to its continued vitality, since the opinions in those cases expressly distinguish themselves from the substantive impairment found in Danzer. Nonetheless, plaintiff argues that Danzer is no longer valid law and that the substance/procedure distinction drawn in that case is equally untenable. Plaintiff relies largely on Wesley Theological Seminary of United Methodist Church v. United States Gypsum Co., 876 F.2d 119 (D.C.Cir.1989), cert. denied, 494 U.S. 1003, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990).[2] In that case, Wesley sued Gypsum for providing Wesley with building tiles which contained asbestos. In defense, Gypsum asserted that Wesley's claim was time-barred because the injury alleged did not occur within ten years after the defective improvement to the property, as required under the District of Columbia's statute of repose. However, while the case was pending, an amendment to the time-bar statute provided that the statute was inapplicable to manufacturers such as Gypsum. Relying on the earlier time-bar statute, the district court granted partial summary judgment for Gypsum, reasoning that the statute of repose conferred upon Gypsum a substantive right not to be sued. The Court of Appeals reversed.
 
 
 51
 The D.C. Circuit rejected the defendant's argument that "changes in purely procedural provisions may be retroactive while changes in substantive ones may not." 876 F.2d at 121. The Court relied heavily on Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), and Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984), two Supreme Court cases which did not accept due process challenges to expressly retroactive statutes. Under those cases, retroactive economic legislation need only be justified by "a rational legislative purpose" to survive constitutional review. Pension Benefit, 467 U.S. at 730, 104 S.Ct. at 2718. According to the Court in Wesley, the import of Usery and Pension Benefit is that "any substance/procedure dichotomy suggested by Chase is either completely defunct or, at the very most, establishes procedural rules as a safe harbor within which a legislature may freely make retroactive changes." 876 F.2d at 122. The Court in Wesley, acknowledged that "there are real distinctions between a statute of limitation and one of repose," but that "we need not tarry with these theoretical points. Even if they proved that statutes of repose were substantive it would not advance our resolution of the constitutional claim." Id. at 122-23.
 
 
 52
 Unlike the D.C. Circuit, however, the Fourth Circuit has not so rejected the distinction between substance and procedure. As the Goad case demonstrates, see supra, the Fourth Circuit views the differences between statutes of limitation and statutes of repose as corresponding "to the distinction between procedural and substantive laws." 831 F.2d at 511. Further, in the Fourth Circuit, the differences between those two types of timeliness statutes are not viewed as "metaphysical." Wesley, 876 F.2d at 122. Rather, the Court in Goad stated that,
 
 
 53
 "this distinction does not exalt form over substance, nor does it subject the Constitution to the whims of the States in labeling their laws.... [T]he labels serve a useful purpose in describing the various interests underlying the two types of laws. 'The abstract logic of the distinction between substantive rights and remedial or procedural rights may not be clear-cut, but it has been found a workable concept to point up the real and valid differences between rules in which stability is of prime importance and those in which flexibility is a more important value.' "
 
 
 54
 Id. (quoting Chase, 325 U.S. at 314, 65 S.Ct. at 1142).
 
 
 55
 Additionally, as defendant notes, the opinion in Wesley does not specifically mention the Supreme Court's decision in Danzer. In contrast to the D.C. Circuit, the Fourth Circuit has continued to adhere to the line initially drawn in Danzer and later upheld in Chase. In Link v. Receivers of Seaboard Air Line Ry. Co., 73 F.2d 149, 152 (4th Cir.1934), Judge Parker, partly in reliance on Danzer, stated that "where a right of recovery has been lost by reason of failure to institute action within the period limited as a condition of the right, it is not revived by a statute subsequently enacted extending the period." Id. at 152. Such a situation differs from a "repeal of a mere statute of limitations affecting the remedy." Id.
 
 
 56
 In its most recent statement concerning this issue, the Fourth Circuit again affirmed the principle stated in Danzer. In Dinh v. Rust International Corp., 974 F.2d 500 (4th Cir.1992), plaintiff was injured in an industrial accident in 1989 by a machine which had been installed in 1959. Virginia's statute of repose, enacted in 1964, provided that any action against a person responsible for an improvement to real property must be brought within five years after the allegedly defective improvement had been made. Later amendments to that statute provided that the statute's five-year limitation did not apply to manufacturers of machinery such as defendants. The district court granted summary judgment to defendants, reasoning that the 1964 statute of repose applied to the machinery and that therefore defendants "obtained vested rights of repose prior to enactment of the" amendments. Id. at 501. Although on appeal plaintiff did "not argue for a retroactive application" of the amendments, the Fourth Circuit affirmed the district court's conclusion in that regard, stating that "the statute of repose creates substantive rights in potential defendants, which, once vested, may not be legislatively destroyed." Id. (citing School Bd. of City of Norfolk v. U.S. Gypsum Co., 234 Va. 32, 360 S.E.2d 325 (1987)).[3] Thus, the Fourth Circuit appears to follow the substance/procedure distinction drawn by the Supreme Court to a considerably greater degree than the D.C. Circuit; this Court cannot and does not apply Wesley's approach.[4]
 
 
 57
 Moreover, even if this Court were otherwise to consider the import of Wesley, without regard to the Fourth Circuit's caselaw, it would appear that the Supreme Court cases relied upon by the Court in Wesley do not bear directly on the narrow issue at hand. In Usery, the Supreme court approved retroactive application of a congressional statute which imposed a new liability upon coal mine operators for the death or illness of miners caused by coal dust, including those miners whose work terminated before passage of the act. In Pension Benefit, the Supreme court approved retroactive application of an act which amended parts of ERISA by placing retroactive liability upon employers who withdraw from multi-employer pension plans. The statutes at issue in Usery and Pension Benefit established complex regulatory schemes "in the field of national economic policy." Pension Benefit, 467 U.S. at 729, 104 S.Ct. at 2717. In contrast, the Oregon Special IUD Statute relates principally to the timeliness aspect of state common law rights and duties which exist solely with regard to private parties. Thus, it would appear that the decision in Danzer, Chase, and Robbins & Myers deal more closely with the issue involved in this case. Accordingly, this Court relies upon Danzer, Chase, and Robbins & Myers without giving the effect suggested by Wesley to the broader statements contained in Usery and Pension Benefit--statements which themselves appear to pertain to different sorts of statutory schemes than those at issue in the within case.
 
 
 58
 Accordingly, in the light of Supreme Court caselaw and the Fourth Circuit statements on this issue, this Court holds that the Oregon Special IUD statute is unconstitutional. Under the Oregon Statute of Repose, Ms. Shadburne's claim is untimely and thus, defendant's motion for judgment on the pleadings will be granted in a separate Order of even date herewith.
 
 
 
 [1]
 Shadburne filed suit in Maryland rather than Oregon because she also sued the Dalkon Shield's inventor, and he was not subject to suit in Oregon
 
 
 [2]
 The Oregon legislature excluded asbestos manufacturers in an earlier amendment, Or.Rev.Stat. Sec. 30.907 (1993), and has since excluded breast implant manufacturers, Or.Rev.Stat. Sec. 30.908 (1993)
 
 
 [3]
 The 1989 amendments made several other minor changes to the 1987 act that are not relevant here. See 1989 Or.Rev.Stat. ch. 642
 
 
 [4]
 The Special IUD Statute does not have a code section in the Oregon Code; however, it does appear in the Oregon Code immediately preceding Sec. 30.900 under the title "ACTION AGAINST MANUFACTURER OF INTRAUTERINE DEVICE."
 
 
 [5]
 The Oregon statute at issue in the present case expressly states that it applies retroactively
 
 
 [1]
 "The Fourteenth Amendment does not make an act of state legislation void merely because it has some retrospective operation.What is does forbid is taking of life, liberty or property without due process of law.... Assuming that statutes of limitation, like other types of legislation, could be so manipulated that their retroactive effects would offend the Constitution, certainly it cannot be said that lifting the bar of a statue of limitation so as to restore a remedy lost through mere lapse of time is per se an offense against the Fourteenth Amendment."
 Chase, 325 U.S. at 315-16, 65 S.Ct. at 1143.
 
 
 [2]
 Plaintiff also relies on Independent School Dist. No. 197 v. W.R. Grace & Co., 752 F.Supp. 286 (D.Minn.1990), which cites to and relies largely upon the D.C. Circuit's opinion in Wesley. Thus, while the following discussion addresses the opinion in Wesley, it is also applicable to W.R. Grace
 
 
 [3]
 The plaintiff contended on appeal that the 1964 statute did not apply to the improvements completed prior to the enactment of that statute. The Fourth Circuit rejected that argument
 
 
 [4]
 See also Davis v. Valley Distrib. Co., 522 F.2d 827, 830 n. 7 (9th Cir.1975), cert. denied, 429 U.S. 1090, 97 S.Ct. 1099, 51 L.Ed.2d 535 (1977) (explaining difference between Danzer and Chase); Starks v. S.E. Rykoff & Co., 673 F.2d 1106, 1109 (9th Cir.1982) (same)