252 F.3d 1078 (9th Cir. 2001)
 KATHY LYON, AN INDIVIDUAL AND AS GUARDIAN AD LITEM FOR AARON J. LYON; & TARA JEAN LYON; AARON J. LYON, BY AND THROUGH HIS GUARDIAN AD LITEM KATHY LYON; TARA JEAN LYON, BY AND THROUGH HER GUARDIAN AD LITEM KATHY LYON; DAVID LYON, BY AND THROUGH ITS PERSONAL REPRESENTATIVE KATHY LYON, PLAINTIFF-COUNTER-DEFENDANT-CROSS-DEFENDANTS-APPELLANTS,
v.
AGUSTA S.P.A.; SIAI MARCHETTI CORPORATION; SESTO CALENDE WORKS OF AGUSTA; AGUSTA AEROSPACE CORPORATION, DEFENDANT-COUNTER-CLAIM-3RD-PARTY-PLAINTIFFS-APPELLEES,
AND
UNITED STATES OF AMERICA, INTERVENOR.
KATHY LYON, AN INDIVIDUAL AND AS GUARDIAN AD LITEM FOR AARON JEAN LYON; & TARA JEAN LYON AARON J. LYON, BY AND THROUGH HIS GUARDIAN AD LITEM KATHY LYON; TARA JEAN LYON, BY AND THROUGH HER GUARDIAN AD LITEM KATHY LYON; DAVID LYON, BY AND THROUGH ITS PERSONAL REPRESENTATIVE KATHY LYON, PLAINTIFF-COUNTER-DEFENDANT-CROSS-DEFENDANTS-APPELLANTS-CROSS-APPELLEES,
v.
AGUSTA S.P.A.; SIAI MARCHETTI CORPORATION; AGUSTA AEROSPACE CORPORATION; SESTO CALENDE WORKS OF AGUSTA, DEFENDANT-COUNTER-CLAIM-3RD-PARTY-PLAINTIFFS-APPELLEES-CROSS-APPELLANTS,
AND
UNITED STATES OF AMERICA, INTERVENOR.
BELINDA POLLACK, INDIVIDUALLY; HANNA MARIE POLLACK, BY AND THROUGH HER GUARDIAN AD LITEM, BELINDA POLLACK; RENEE STEVEN POLLACK, BY AND THROUGH HER GUARDIAN AD LITEM, BELINDA POLLACK; ESTATE OF STEVEN S. POLLACK, BY AND THROUGH ITS PERSONAL REPRESENTATIVE, BELINDA POLLACK, PLAINTIFFS-APPELLANTS,
v.
AGUSTA, S.P.A.; SIAI MARCHETTI CORPORATION, DEFENDANTS-APPELLEES,
AND
UNITED STATES OF AMERICA, INTERVENOR.
BELINDA POLLACK, INDIVIDUALLY; HANNA MARIE POLLACK, BY AND THROUGH HER GUARDIAN AD LITEM, BELINDA POLLACK; RENEE STEVEN POLLACK, BY AND THROUGH HER GUARDIAN AD LITEM, BELINDA POLLACK; ESTATE OF STEVEN S. POLLACK, BY AND THROUGH ITS PERSONAL REPRESENTATIVE, BELINDA POLLACK, PLAINTIFFS-APPELLANTS-CROSS-APPELLEES,
v.
AGUSTA, S.P.A.; SIAI MARCHETTI CORPORATION, DEFENDANTS-APPELLEES-CROSS-APPELLANTS.
 No. 99-55986,, No. 99-55987,, No. 99-56010,, No. 99-56011
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted April 17, 2001
Filed June 7, 2001
Amended July 9, 2001
 
 [Copyrighted Material Omitted]
 Stuart B. Esner, Esner & Chang, Los Angeles, California, for plaintiffs-appellants and cross-appellees Kathy Lyon, Aaron J. Lyon, et al. Ian Herzog, Law Offices of Ian Herzog, Santa Monica, California, for plaintiffs-appellants and cross-appellees Belinda Pollack, Hanna Marie Pollack, et al.
 Rudolph V. Pino, Jr., Pino & Associates, White Plains, New York, (argued); Keith G. Wileman, Lord, Bissell & Brook, Los Angeles, California, for the defendants-appellees, and cross-appellants. Michael S. Raab, Civil Division, Washington, D.C., for the United States as intervenor.
 Appeal from the United States District Court for the Central District of California Consuelo B. Marshall, District Judge, Presiding D.C. No. CV-94-07769-CBM, D.C. No. CV-94-07769-CBM, D.C. No. CV-94-07770-CBM, D.C. No. CV-94-07770-CBM
 Before: Harry Pregerson, Ferdinand F. Fernandez, and Susan P. Graber, Circuit Judges.
 
 
 1
 The opinion of the court was delivered by: Fernandez, Circuit Judge
 
 Opinion by Judge Fernandez
 OPINION
 
 2
 David Lyon, Steven Pollack and Roy Belzer were killed in the crash of an airplane. Kathy Lyon, et al., and Belinda Pollack, et al., survivors of David Lyon and Steven Pollack, respectively, (collectively Survivors) brought this action against Agusta S.P.A., Agusta Aerospace Corporation, Sesto Calende Works of Agusta, and Siai Marchetti Corporation. The Agusta entities are owners of Marchetti, which designed and manufactured the aircraft. Those entities and Marchetti are instrumentalities of the Republic of Italy.[1] Marchetti moved to dismiss the action on the basis that under the Foreign Sovereign Immunities Act of 1976 (the FSIA), the district court did not have jurisdiction over it. See 28 U.S.C. §§ 1604. It also moved to dismiss on the basis that the action was barred by the provisions of the General Aviation Revitalization Act of 1994 (GARA). See Pub. L. No. 103-298, 108 Stat. 1552 (1994) (provisions at 49 U.S.C. §§ 40101 notes). The district court denied the former motion and granted the latter. The Survivors and Marchetti appeal. We affirm.
 
 BACKGROUND
 
 3
 On November 26, 1993, an airplane designed and manufactured by Marchetti and known as model F-260 crashed in Santa Monica, California. David Lyon and Steven Pollack were aboard, and both were killed in the accident. The airplane had originally been sold by Marchetti in December of 1970 to SA Sabena N.V. in Belgium and had, after intervening transfers, become the property of the owner of the craft at the time of the crash. The Survivors brought their action on November 15, 1994, but the effective date of GARA was August 17, 1994, and that Act declares that, absent certain defined exceptions, "no civil action . . . may be brought against the manufacturer . . . if the accident occurred" more than 18 years after the aircraft was delivered to the first purchaser or to a person in the business of selling aircraft. GARA §§§§ 2(a), 3(3). The Survivors asserted that the Act did not apply to them. They also asserted that Marchetti had failed to issue later warnings about an alleged problem with the aircraft, and that amounted to replacement of a component part, which would have started a new 18-year period running from the time of that failure. The district court held that GARA barred the actions.
 
 STANDARDS OF REVIEW
 
 4
 We review de novo a district court's dismissal of a complaint for failure to state a claim. Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997). "A complaint should not be dismissed unless it appears beyond doubt that the Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief." Id. We also review de novo the issue of whether a statute applies retrospectively. United States ex rel. Lindenthal v. Gen.Dynamics Corp., 61 F.3d 1402, 1406-07 (9th Cir. 1995). In addition, the existence of subject matter jurisdiction under the FSIA is a question of law, which we review de novo. Phaneuf v. Republic of Indonesia , 106 F.3d 302, 304-05 (9th Cir. 1997). Finally, we review the district court's denial of a Federal Rule of Civil Procedure 60(b) motion for an abuse of discretion. Civic Ctr. Square, Inc. v. Ford (In re Roxford Foods, Inc.), 12 F.3d 875, 879 (9th Cir. 1993).
 
 JURISDICTION
 
 5
 Before proceeding any further, we must determine whether we have jurisdiction over this action in light of the fact that Marchetti is an instrumentality of the Republic of Italy.[2] There can be no dispute about the general rule that"a foreign state shall be immune from the jurisdiction of the courts of the United States." 28 U.S.C. §§ 1604. Of course, there are exceptions to that, id., and one of them is that there shall not be immunity in a case "in which the action is based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. §§ 1605(a)(2).
 
 
 6
 The parties do agree that Marchetti's acts of designing, manufacturing and selling the F-260 were "in connection with a commercial activity" and that the activity was"outside the territory of the United States." What is in dispute is whether that activity caused "a direct effect in the United States," and it is that rather enigmatic proposition that we must construe. The Supreme Court has unraveled the enigma to some extent.
 
 
 7
 In Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 112 S. Ct. 2160, 119 L. Ed. 2d 394 (1992), the Court was faced with a situation where Argentina had issued certain bonds payable in United States dollars, with payment, at the election of the creditor, to be made on the New York market. Id. at 609-10, 112 S. Ct. at 2163-64. When the bonds matured, Argentina did not pay them, and an action was commenced against it in the United States District Court for the Southern District of New York. Pursuant to the FSIA, Argentina moved to dismiss for lack of jurisdiction, but that motion was denied. Id. at 610, 112 S. Ct. at 2164. The Court began by rejecting the notion that in order for an effect to be direct, it must be substantial or foreseeable. Id. at 618, 112 S. Ct. at 2168. Rather, said the Court, "an effect is `direct' if it follows `as an immediate consequence of the defendant's . . . activity.' " Id. (citation omitted). The Court, thus, explicated the text with an oracular pronouncement of its own. It had little trouble in applying that to the case before it, where Argentina had actually contracted to make payments in the United States. Id. at 618-19, 112 S. Ct. at 2168-69. Its application here is not quite as obvious.
 
 
 8
 Because of that, Marchetti seizes on a case in which a district court held that the FSIA exception did not apply to the crash of a helicopter in Colorado. Four Corners Helicopters, Inc. v. Turbomeca S.A., 677 F. Supp. 1096, 1097 (D. Colo. 1988). That craft was manufactured, at least in part, by an instrumentality of France and was sold in that country. Id. at 1098. The helicopter finally found its way into the United States many years later. The court, which did not have the benefit of Weltover, ruled that in order to have a direct effect here "[t]he injury suffered by the plaintiff must be `a substantial, foreseeable and immediate causal result of an act of the defendant outside the United States in connection with [defendant's] commercial activity elsewhere.' " Id. at 1101 (citation omitted). But that is exactly what the Supreme Court said the effect need not be. Again, it need only be an "immediate consequence" of the defendant's activity. Thus, Marchetti's reliance on Four Corners is misplaced. See Adler v. Fed. Republic of Nigeria, 219 F.3d 869, 876 (9th Cir. 2000); see also Corzo v. Banco Cent. de Reserva del Peru, 243 F.3d 519, 525-26 (9th Cir. 2001).
 
 
 9
 Once we eschew both substantiality and foreseeability, we must interpret "immediate consequence" to mean something different from those terms. Particularly where failure of a manufactured product is concerned, a more appropriate reading of the phrase should focus on whether some intervening act broke the chain of causation leading from the asserted wrongful act to its impact in the United States.[3] That view is propounded in Vermeulen v. Renault, U.S.A., Inc. , 985 F.2d 1534 (11th Cir. 1993), which is more apposite to the case at hand than the arguments pressed upon us by Marchetti. Vermeulen was driving a Renault in Georgia when she was injured in an accident. The car was designed and manufactured by a corporation which was wholly owned by the French government. Id. at 1537. The court applied the Weltover test and held: "The complaint in this case alleges that the injuries Vermeulen suffered in an automobile accident on the roads of Georgia were the result of RNUR's negligent design and manufacture of the LeCar passenger restraint system. We can hardly imagine a more immediate consequence of the defendant's activity." Id. at 1545. It should be noted, however, that there can be little doubt that the sale and use of the automobile in question in the United States was contemplated by the manufacturer. Id. at 1537-42. Nevertheless, that fact relates to foreseeability more than it relates to "immediate consequence," and in Vermeulen the court properly focused on the latter. A defective product failed because of the defect; the consequence could hardly be more immediate. The same is allegedly true in the case at hand.
 
 
 10
 Marchetti asks us to consider, instead, the gloss placed on the concept in Princz v. F.R.G., 26 F.3d 1166 (D.C. Cir. 1994). That was an attempt by a Holocaust survivor to sue the Federal Republic of Germany for injuries he suffered in Europe. Id. at 1168. The court declared that there was no direct effect in the United States and opined that"[a] `direct effect' however, `is one which has no intervening element, but, rather, flows in a straight line without deviation or interruption.' " Id. at 1172 (citation omitted). In so doing, the court quoted one of its own pre-Weltover cases. Even if we apply that gloss, it is pellucid that the line between the defective production of the aircraft and the failure of that product because of the defect was a straight one. The acts which resulted in production of an allegedly defective product were legally significant and gave rise to the claim at hand. See Adler, 219 F.3d at 876.
 
 
 11
 Therefore, we hold that we do have jurisdiction. In so stating, we recognize that much time passed between the manufacture and the injury and that the aircraft even changed hands. Still, time itself is linear, and while questions about its ravages, or speculation about the ravages of others along the way, may affect proof, they do not affect jurisdiction. Nevertheless, considerations of that sort do lead legislatures to enact statutes of repose. With that in mind, we turn to GARA.
 
 DISCUSSION
 
 12
 It is apparent that Congress was deeply concerned about the enormous product liability costs that our tort system had imposed upon manufacturers of general aviation aircraft. It believed that manufacturers were being driven to the wall because, among other things, of the long tail of liability attached to those aircraft, which could be used for decades after they were first manufactured and sold. See H.R. Rep. No. 103-525, pt. I, at 1-4 (1994), reprinted in 1994 U.S.C.C.A.N. 1638, 1638-41. Congress therefore enacted GARA, which provides that:
 
 
 13
 Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred -
 
 
 14
 (1) after the applicable limitation period [18 years] beginning on -
 
 
 15
 (A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or
 
 
 16
 (B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft . . . .
 
 
 17
 GARA §§ 2(a)(1). That is a classic statute of repose. See Caldwell v. Enstrom Helicopter Corp., 230 F.3d 1155, 1156 (9th Cir. 2000). It does not run from the date on which an injury occurs. There will be a statute of limitations which runs from that date. Rather, it runs from what amounts to the date of the first transfer from the manufacturer. Thus, if an accident occurs one day before the GARA period runs, an action will be possible and will be governed by the usual statute of limitations. If it occurs on the day after the GARA period runs, no action whatsoever is possible.
 
 
 18
 The Survivors argue, however, that GARA is not retroactive; that is, it does not properly cover their action because the accident in question occurred before GARA was enacted. They add that if GARA does cover them, it is unconstitutional. We disagree with those propositions. In the remainder of this opinion, we will deal with those questions, and other related issues.
 
 A. Retroactivity
 
 19
 No doubt there can be serious philosophical debates over whether retroactive legislation can be called law at all, if the purpose of law is to bring good order to society by guiding our activities and channeling them along desirable lines.[4] But, the Supreme Court has made it clear that, with some noteable exceptions, retroactive legislation is permissible. With that in mind, it has outlined the proper approach to reading statutes. All things remaining equal, we presume that statutes are not meant to be retroactive. See Landgraf v. USI Film Prods., 511 U.S. 244, 265-67, 114 S. Ct. 1483, 1497-98, 128 L. Ed. 2d 229 (1994). Presumptions aside, we must give a statute "its intended scope." Id. at 267, 114 S. Ct. at 1498. We must first "determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules." Id. at 280, 114 S. Ct. at 1505. If Congress has not done so, we must go on to ask "whether the new statute would have retroactive effect." Id. In so doing, we ask "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id. If it does have that effect, we apply the traditional presumption, "that it does not govern absent clear congressional intent favoring such a result." Id. Still, we must try to avoid sweeping away "settled expectations" unnecessarily. See id. at 266, 114 S. Ct. at 1497.
 
 
 20
 We bring all of this to the provisions of GARA wherein Congress has declared that the "Act shall take effect on the date of" its enactment, August 17, 1994. GARA§§ 4(a). There is nothing extraordinary about that wording as such; it certainly does not speak to retroactivity. See Landgraf, 511 U.S. at 257, 114 S. Ct. at 1493. But preceding that declaration is the phrase "[e]xcept as provided in subsection (b)," and that subsection reads, "[t]his Act shall not apply with respect to civil actions commenced before the date of the enactment of this Act." GARA §§ 4(b). That language may not expressly state the reach of the statute, although a moment of reflection suggests that it must have been intended to cut off claims that were not already part of a commenced civil action. Surely it expresses a clear intent that other claims be barred. Congress could easily have said that the statute did not apply to any "accidents that occurred" before the effective date of the Act; it had used just that form of locution in §§ 2(a) when it defined the scope of the Act itself. Instead, just a couple of relatively short sections later it used the language found in§§ 4(b) and indicated a desire to preserve pending actions only. We think that, "[n]othing, indeed, but a different intent explains the different treatment." Lindh v. Murphy, 521 U.S. 320, 329, 117 S. Ct. 2059, 2064, 138 L. Ed. 2d 481 (1997).
 
 
 21
 It is not unusual for Congress to draw just that distinction between claims which are already part of a commenced civil action and those which are possible, but have not been filed yet. See Gray v. First Winthrop Corp., 989 F.2d 1564, 1567, 1572 (9th Cir. 1993). We, therefore, are satisfied that Congress clearly expressed its intention that GARA be applied to all actions that had not already been commenced on its effective date.
 
 
 22
 But, say the Survivors, perhaps a civil action is commenced when an accident has occurred because that puts in train a series of events that could lead to an actual filing. However, normal use of legal language would not dub that"commencement of an action." See, e.g., Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."); Altseimer v. Bell Helicopter Textron Inc., 919 F. Supp. 340, 342 (E.D. Cal. 1996) (same). Also, say the Survivors, we should interpret GARA to provide that if any person has filed a civil action arising out of the same accident, everybody involved in the accident should be deemed to have commenced one. Again, we are aware of no authority for that interesting proposition, and we decline to create that rule out of whole cloth. The mischief it could cause is palpably obvious. Certainly, the fact that somebody has already started an action gives notice of that person's claim; it also tends to show that there was no artificial barrier to commencement of an action. At any rate, there is no reason to create a rule that one party's filing of an action commences the action of an entirely separate party.
 
 B. Constitutionality
 
 23
 The Survivors next argue that if GARA bars their action, it is unconstitutional both substantively and procedurally. Their substantive argument rests on the theory that they have been deprived of a vested property right in their cause of action. That argument cannot succeed. We have squarely held that although a cause of action is a "species of property, a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained." Grimesy v. Huff, 876 F.2d 738, 743-44 (9th Cir. 1989) (citations and internal quotation marks omitted); see also Austin v. City of Bisbee, 855 F.2d 1429, 1435-36 (9th Cir. 1988).
 
 
 24
 The Survivors also claim that the statute violates a procedural due process right because a statute of limitations cannot be shortened in a way that eliminates the plaintiff's ability to file an action. See Chenault v. United States Postal Serv., 37 F.3d 535, 539 (9th Cir. 1994); Ockerman v. May Zima & Co., 27 F.3d 1151, 1157 (6th Cir. 1994); Capitan Grande Band of Mission Indians v. Helix Irrigation Dist., 514 F.2d 465, 468 (9th Cir. 1975). But GARA is not a statute of limitations, and does not shorten any statute of limitations. It is, again, a statute of repose. See Caldwell, 230 F.3d at 1156. The focus of a statute of repose is entirely different from the focus of a statute of limitations. The latter bars a plaintiff from proceeding because he has slept on his rights, or otherwise been inattentive. Therefore, it is manifestly unjust to tell somebody that he has X years to file an action, and then shorten the time in midstream. However, a statute of repose proceeds on the basis that it is unfair to make somebody defend an action long after something was done or some product was sold. It declares that nobody should be liable at all after a certain amount of time has passed, and that it is unjust to allow an action to proceed after that. In this case, for example, there was an attempt to sue the manufacturer for the allegedly defective design of a part of an aircraft that had been in service for some 23 years after it was first sold. While an injured party might feel aggrieved by the fact that no action can be brought, repose is a choice that the legislature is free to make. See generally Stuart v. Am. Cyanamid Co.,158 F.3d 622, 627 (2d Cir. 1998); Amoco Prod. Co. v. Newton Sheep Co., 85 F.3d 1464, 1472 (10th Cir. 1996); Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1259 (9th Cir. 1993).
 
 
 25
 Therefore, when we focus, as Congress did, on the need to revitalize a flagging industry, it is difficult to see any real unfairness in the decision to cut the infinite-liability tail, even though a cause of action might have accrued before selection of the length of the period of repose was made. The holder of an existing cause of action was no more, or less, worthy than a person who would come later, and had no less of an opportunity to seek a recovery. In neither case are the jeremiads of the injured party less appealing. The legislative decision was not made on the basis of the injured party's alacrity or merit; it was made on the basis that in the course of human affairs too much time had elapsed since the date of a defendant's acts.
 
 
 26
 Of course, the legislature must act in a rational manner; that almost goes without saying. But barring irrational or arbitrary conduct, Congress can adjust the incidents of our economic lives as it sees fit. See Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 729, 104 S. Ct. 2709, 2717, 81 L. Ed. 2d 601 (1984); Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15, 96 S. Ct. 2882, 2892-93, 49 L. Ed. 2d 752 (1976). Indeed, the Supreme Court has not blanched when settled economic expectations were upset, as long as the legislature was pursuing a rational policy. See R.A. Gray & Co. , 467 U.S. at 729, 104 S. Ct. at 2717; Turner Elkhorn Mining Co., 428 U.S. at 15, 96 S. Ct. at 2892-93. Here the choice was assuredly rational. In so stating, we do not overlook the Survivors' request that we consider Shadburne-Vinton v. Dalkon Shield Claimants Trust, 60 F.3d 1071, 1074 (4th Cir. 1995), where the court opined that "in analyzing the constitutionality of retroactive legislation, statutes of repose are now treated the same as statutes of limitation." Of course, they are treated the same in the sense that both are subject to rational basis review. But that does not mean that what is rational for one is precisely the same as what is rational for the other. We can, for example, test the rationality of both dogs and cats, but we test each according to the characteristics of its species. Similarly, in this instance the different characteristics of the different species of statutes -- repose versus limitations -- affect considerations about their rationality. The Fourth Circuit recognized as much when it went on to explain that the issue actually was whether the statute in question served"a legitimate legislative purpose that is furthered by rational means." Id. at 1075-76. It then upheld an enlargement of a statute of repose because that simply readjusted the benefits and burdens of economic life. Id. at 1077. That surely does not affect our decision here, except as it supports it. This statute, too, simply reallocated those benefits and burdens.
 
 
 27
 In truth, what seems to gall the Survivors most is that other victims of the accident in question here had already filed their actions, and Congress did ameliorate the harshness of GARA to some extent when it determined that those who already had actions on file would not be barred from proceeding. But that glissades to their claim that their equal protection rights have been violated.
 
 
 28
 The glissando, however, does not advance their cause, for it is stymied by precedent. In 1991, the Supreme Court authoritatively resolved uncertainty regarding the proper statute of limitations in securities cases. See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gibertson, 501 U.S. 350, 111 S. Ct. 2773, 115 L. Ed. 2d 321 (1991). It decided upon a period of one year. Id. at 364, 111 S. Ct. at 2782. That decision took many people by surprise because in places like the Ninth Circuit a longer statute had been in use. Congress decided to ameliorate the plight of people caught unawares, but in doing so it limited relief to those who had already commenced an action on the day that the Supreme Court ruled. See 15 U.S.C. §§ 78aa-1. That was attacked as a violation of the equal protection principles buried in the due process clause of the Fifth Amendment.[5] We declared that Congress could limit its special concerns to those who "had legitimately and indisputably relied on the state of the law prior to Lampf." Gray, 989 F.2d 1573-74. We saw nothing irrational about that choice and determined, instead, that it passed "constitutional muster, amply surviving rational basis scrutiny. " Id. at 1574. In so doing, we quoted the Eleventh Circuit's statement that:
 
 
 29
 It is not irrational for Congress to limit its remedy to those individuals who have gone so far as to file suit in reliance upon the existing statute of limitations. These individuals will suffer the most concrete injury because they have expended significant time and effort to bring their action, not to mention substantial funds for attorney's fees and court costs.
 
 
 30
 Id. (citation omitted). So it is here. Congress rationally can, and did, offer special protection to those who had already filed their actions. That was not irrational. GARA is constitutional in this respect.
 
 C. Subsidiary Arguments
 
 31
 In an attempt to save the day, the Survivors make two subsidiary arguments. First, they assert that a new 18-year period started against Marchetti under the "component part" portion of the Act. See GARA §§ 2(a)(2). Second, they assert that they should have been permitted to amend to spell out a claim under the exception regarding misrepresentations to the Federal Aviation Administration. See GARA §§ 2(b)(1). We reject both of those claims.
 
 
 32
 (1) Component parts
 
 
 33
 No doubt, addition of a new component part can start a new 18-year period of repose running from the date of completion of the addition of that part to the aircraft. GARA §§ 2(a)(2). Moreover, we have held that a part need not be hardware; it might actually be something like a"revised aircraft manual." Caldwell, 220 F.3d at 1158. The Survivors attempt to argue that a failure to warn about a newly perceived problem also amounts to something like replacement of a component part because it breaches an alleged continuing duty to upgrade and update. We do not agree. Were that so, GARA would have little value to manufacturers because the plaintiff could always argue that an 18-year period commenced if the manufacturer did nothing at all, while simultaneously arguing that if the manufacturer did do something that, too, would start a new 18-year period running. That is not the law, and in Caldwell we alluded to the fact that a revision to a manual was quite different from a failure to warn. Id. at 1157. What we alluded to there, we reify here: a failure to warn is decidedly not the same as replacing a component part with a new one. It does not allow the Survivors to bypass the GARA bar.
 
 
 34
 (2) Motion to vacate
 
 
 35
 Finally, the Survivors assert that the district court abused its discretion when it denied their motion under Federal Rule of Civil Procedure 60(b)(6) to vacate its prior judgment so that they could amend their complaint to assert the exception involving knowing misrepresentations to the FAA. GARA §§ 2(b)(1). Rule 60(b)(6) does allow the district court to vacate its judgment based on "any other reason justifying relief from the operation of the judgment." The Survivors assert that their reason is that they have a fait nouveau. They say that they have now learned that fraud on the FAA was committed by Marchetti. The fatal flaw in their argument centers on the phrase "any other reason." The reason they state is not another reason at all; it is, in fact, already contained in Rule 60(b)(2) (newly discovered evidence) or, perhaps, in Rule 60(b)(3) (fraud). But motions under those provisions must be brought within one year of the judgment which is being attacked. See Fed. R. Civ. P. 60(b). The judgments in question here were entered in April of 1996, and the motions were brought in April of 1998. Thus, the motions were not brought within one year.
 
 
 36
 The Survivors cannot avoid the time bar by pointing out that their motion was made under Rule 60(b)(6). That portion of the rule is not a substitute for the preceding portions. See United States v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049-50 (9th Cir. 1993). The long-standing rule in this circuit is that, "clause (6) and the preceding clauses are mutually exclusive; a motion brought under clause (6) must be for some reason other than the five reasons preceding it under the rule." Molloy v. Wilson, 878 F.2d 313, 316 (9th Cir. 1989); see also Lafarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp., 791 F.2d 1334, 1338 (9th Cir. 1986). That must be so, if the one year limitation is not to be repealed by judicial fiat. The district court did not abuse its discretion.
 
 CONCLUSION
 
 37
 Congress decided that the economic health of the general aviation aircraft manufacturing industry depended on lifting the requirement that manufacturers abide the possibility of litigation for the indefinite future when they sell an airplane. It, therefore, generally limited their exposure to accidents which occur within 18 years of the first delivery of the airplane. GARA §§§§ 2(a), 3. Marchetti first delivered the F-260 in question here about 23 years before the crash in California. We hold that in GARA Congress constitutionally barred an action based upon that accident, even though GARA itself was not passed until after the accident occurred. We also hold that, while Marchetti would rather escape liability here on the jurisdictional grounds provided by the FSIA, it cannot do so, but must be content to rely on GARA faute de mieux.
 
 
 38
 AFFIRMED. The parties shall bear their own costs on appeal.
 
 
 
 Notes:
 
 
 [1]
 Hereafter, for convenience, we will refer to all the entities collectively as Marchetti.
 
 
 [2]
 There is no dispute that Marchetti is an instrumentality. As such, it is a foreign state. See 28 U.S.C. §§ 1603(a) & (b).
 
 
 [3]
 Marchetti suggests that "immediate" refers to time, and a delay of some 23 years cannot be immediate. We disagree. While one meaning of immediate is "occurring, acting, or accomplished without loss of time," the more relevant meaning in this context is "acting or being without the intervention of another object, cause, or agency. " Webster's Third New International Dictionary 1129 (1986).
 
 
 [4]
 See Lon Fuller, The Morality of Law 39, 44 (1964).
 
 
 [5]
 The Supreme Court has, of course, determined that the equal protection clause of the Fourteenth Amendment is, essentially, surplusage because its principles are contained and embedded in the concept of due process and, therefore, can be found within the Fifth Amendment although it does not mention equal protection at all. See Vance v. Bradley, 440 U.S. 93, 94 n.1, 99 S. Ct. 939, 941 n.1, 59 L. Ed. 2d 171 (1979); Bolling v. Sharpe, 347 U.S. 497, 500, 74 S. Ct. 693, 695, 98 L. Ed. 884 (1954).