Carol Lynn **LUXFORD**, Dennis Roy Luxford

v.

**DALKON SHIELD CLAIMANTS TRUST.**

Civil Action No. K–96–1383.

United States District Court,
D. Maryland.

Sept. 12, 1997.

Michael A. Pretl and Ashcraft & Gerel, Baltimore, MD and H. Robert Erwin, Jr. and The Erwin Law Firm, Baltimore, MD, for Plaintiffs.

Paul F. Strain, Dino S. Sangiamo, Mark D. Maneche and Venable, Baetjer & Howard, LLP, Baltimore, MD, for Defendant.

### *MEMORANDUM*

GRIMM, United States Magistrate Judge.

Plaintiffs have sued the Dalkon Shield Claimants Trust ("Trust") in an effort to recover for personal injuries allegedly sustained from plaintiff Carol Lynn Luxford's use of the Dalkon Shield, an intrauterine device ("IUD") manufactured and sold by the A.H. Robins Company ("Robins"). The case has been referred to me for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c) (1993) and Local Rule 301

(D.Md.1997). Now pending is the Trust's Motion for Summary Judgment, plaintiffs' opposition thereto and the Trust's reply. (Paper Nos. 18, 20 and 21). Having read and considered the papers submitted by the parties, and having heard oral argument on August 18, 1997, the Trust's motion will be granted.

## BACKGROUND

In September 1981, Ms. Luxford, an Oregon resident, filed suit against Robins in the United States District Court for the District of Oregon, alleging that use of the Dalkon Shield between September 1971 and May 1977 rendered her infertile. Robins moved to dismiss the case on grounds that the action was barred by an Oregon statute of repose, Or.Rev.Stat. § 30.905, which at that time required that all product liability actions be brought within eight years of the date that the product was purchased. By order dated August 26, 1983, the Oregon district court granted Robins' Motion for Summary Judgment, holding that Ms. Luxford's case was time-barred by Oregon's statute of repose. Ms. Luxford did not appeal.[1]

While the Oregon case was pending, the Luxfords filed an additional lawsuit against Robins in this Court, again alleging that Ms. Luxford had been seriously and permanently injured from use of the Dalkon Shield. Sitting in diversity, on December 20, 1984, the Court (Senior District Judge Northrop) entered summary judgment against the Luxfords, finding that the August 1983 decision by the Oregon district court—based upon the state statute of repose—was a valid, final adjudication on the merits which was claim preclusive. *In re Dalkon Shield Cases,* 599 F.Supp. 1351, 1353 (D.Md.1984).

Joined by nearly 50 other Oregon Dalkon Shield claimants whose lawsuits against Robins had also been dismissed by Judge Northrop, the Luxfords noted a timely appeal with the Fourth Circuit. While the case was before the Fourth Circuit, Robins filed a

petition for bankruptcy in the United States District Court for the Eastern District of Virginia. All Dalkon Shield litigation, including the plaintiffs' appeal, was consequently stayed.

During the bankruptcy stay, and while the plaintiffs' appeal was pending, Oregon's legislature promulgated a series of laws exempting IUD-related injuries from the eight year state statute of repose (hereinafter referred to as the "Oregon IUD legislation"). The first Act was passed in 1987. 1987 Or. Laws ch.4 §§ 5–10. Sections 5 and 6 of the 1987 Act replaced the eight year repose bar with a two year statute of limitations running from the date of discovery, and made this rule applicable to all cases tried after the Act's effective date. Section 8 of the Act established a one year period for refiling claims that had been dismissed on grounds that they were time-barred under the prior repose statute regardless of when the cause of action accrued, provided the suit was dismissed on or after July 1, 1977. Two years later, the Oregon legislature passed an additional statute which effectively precluded IUD manufacturers from asserting any statutes of limitation or repose defenses. 1989 Or. Laws ch. 642. Section 4 of this Act provided that "[a]ny such action in which final judgment has been entered in favor of the manufacturer based solely on a previous version of the statute of limitations or repose may be refiled within one year of the effective date of this Act." 1989 Or. Laws ch. 642 § 4. Thus, the final change to Oregon's statute of repose was passed, in part, to specifically authorize the reopening of final judgments against IUD plaintiffs whose cases had previously been dismissed as time-barred.

In response to the Oregon IUD legislation, a consent order was entered by the Virginia bankruptcy court under which the refiling periods set forth in the Oregon IUD legislation would be tolled until 30 days after the expiration of the Robins' bankruptcy stay.[2]

---

1. During oral argument, counsel for the Luxfords initially took the position that a final order had not been entered by the Oregon district court. When shown the August 26, 1983 order, however, he conceded that it was a final order. He

was given time by the Court to submit documentation to show that the order was not final. He did not do so.

2. During the August hearing on the defendant's motion, counsel for the Trust conceded that the

Robins, however, expressly reserved its right to challenge the constitutionality of this legislation.[3]

On December 15, 1989, Robins emerged from bankruptcy under a Plan of Reorganization which created the Trust.[4] Approximately two years later, the Fourth Circuit mistakenly dismissed the Luxfords' appeal. *See Shadburne–Vinton v. Dalkon Shield Claimants Trust*, 60 F.3d 1071, 1073 (4th Cir.1995). The Luxfords did not seek reconsideration of the order of dismissal. Instead, on April 1, 1996, they filed another lawsuit against the Trust in the Circuit Court for Baltimore City. The Trust subsequently removed the case to this Court pursuant to 28 U.S.C. § 1452(a) and 28 U.S.C. § 1334(b). I recently denied the plaintiffs' motion to remand the case back to the Maryland state courts. (Paper No. 17). The Trust now moves for summary judgment on the grounds that the 1983 judgment entered against Ms. Luxford by the Oregon federal court bars the plaintiffs' claims.

---

Luxfords' pending case was timely filed under the Oregon IUD legislation.

3. During the August hearing, plaintiffs' counsel argued that the Trust has waived its right to challenge the constitutionality of the Oregon IUD legislation—an assertion counsel for the Trust vigorously denied. When asked for the factual and legal support for his waiver argument, plaintiffs' counsel conceded that he had none. There are no evidentiary facts in this record to support this claim as required by Fed.R.Civ.P. 56(c), and indeed the issue was not raised by plaintiffs' counsel in any pleading or motion. Accordingly, the waiver issue is not properly before the Court, and I will not consider it in determining whether the Trust is entitled to summary judgment.

4. The Trust is charged with administering and disbursing funds to compensate injured claimants, and it has assumed all liabilities against Robins for injuries caused by the Dalkon Shield.

5. It is noteworthy that the Trust has suggested, albeit in passing, that Judge Northrop's decision in the *In re Dalkon Shield Cases* is also entitled to preclusive effect. (Paper No. 18 at 11 n. 5). It may be. Even though the Fourth Circuit erroneously dismissed the Luxfords' appeal, unlike Ms. Shadburne, the Luxfords have not attempted to reopen the appeal or have their first Maryland case reinstated. I need not reach this issue, however, as the Oregon judgment independently bars the Luxfords' pending claims.

6. Federal law determines the preclusive effect to be given to the judgment of the Oregon district

## DISCUSSION

▮▮▮▮ Resolution of the Trust's pending motion requires consideration of two issues. The first issue is whether the 1983 judgment entered against Ms. Luxford is entitled to claim preclusive effect, as the Trust contends.[5] This question was addressed and resolved by this Court in *Pottratz v. Davis*, 588 F.Supp. 949, 954 (D.Md.1984), and the *In re Dalkon Shield Cases*, 599 F.Supp. 1351, 1353–54 (D.Md.1984). Plaintiffs do not contest the correctness of these decisions, or otherwise attempt to reargue the issue here, and I am persuaded that the Court's prior resolution of this question remains correct.[6]

The second and more difficult issue—and one which appears to be of first impression—is whether the retroactive provisions of the Oregon IUD legislation can now, consistent with the Constitution, resurrect the plaintiffs' claims, despite the entry of a valid, final judgment against Ms. Luxford in 1983. Predictably, the plaintiffs urge that it can, and

---

court. *Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1179 (4th Cir.1989). Generally, a prior judgment is claim preclusive under federal law where 1) it is a final adjudication on the merits rendered by a court of competent jurisdiction consistent with due process requirements; 2) the parties are identical, or in privity, in the two actions; and 3) the claims in the second matter are the based upon the same cause of action involved in the earlier proceeding. *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996). These elements are satisfied in this case. First, it is established under Fed.R.Civ.P. 41(b) that the dismissal of an action as time-barred operates as an adjudication on the merits, *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 226–28, 115 S.Ct. 1447, 1457, 131 L.Ed.2d 328 (1995); *Shoup*, 872 F.2d at 1180, 18 James Wm. Moore, et al., *Moore's Federal Practice* ¶ 131.30[3][g] (3rd ed.1997), and plaintiffs' suggestion that the Oregon judgment was not an adjudication on the merits because Ms. Luxford, in effect, abandoned this suit to pursue her claims in Maryland is plainly without merit. *Casto v. Arkansas–Louisiana Gas Co.*, 597 F.2d 1323, 1325 (10th Cir. 1979). Second, it is not disputed that the parties in the present suit are the same or in privity with the original parties. Finally, it is also not contested that the present claims are the same or substantially the same as those in the Oregon litigation. Accordingly, as Judge Northrop concluded, the Oregon judgment is entitled to preclusive effect under res judicata principles.

argue that the Fourth Circuit's decision in *Shadburne–Vinton v. Dalkon Shield Claimants Trust*, 60 F.3d 1071 (4th Cir.1995), says so. The Trust insists, conversely, that the Supreme Court's decision in *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995), is dispositive, and that retroactive application of the Oregon IUD legislation to revive the plaintiffs' claims in this case is unconstitutional. I am convinced that neither *Shadburne* nor *Plaut* squarely address this issue, and that the case turns upon application of the vested rights doctrine under the Fourteenth Amendment's Due Process Clause. The starting point, however, is the *Shadburne* decision.

## A. *Shadburne-Vinton v. Dalkon Shield Claimants Trust*

*Shadburne*, like the present case, involved a personal injury suit by an Oregon Dalkon Shield claimant, Susan Shadburne, against Robins. Shadburne originally filed suit in this Court in January 1983. *See In re Dalkon Shield Cases*, 599 F.Supp. at 1356. Applying the then existing version of Oregon's statute of repose, in December 1984, Judge Northrop granted summary judgment in favor of Robins, holding that Shadburne's claims were time-barred because she had not filed suit within eight years of the insertion of her IUD. *Id.* Along with a number of other Dalkon Shield plaintiffs, including Ms. Luxford, Shadburne filed an appeal with the Fourth Circuit. *Shadburne v. Dalkon Shield Claimants Trust*, 851 F.Supp. 712 (D.Md. 1994). As noted, during the pendency of this appeal, Robins entered bankruptcy and the Oregon IUD legislation was passed.

After Shadburne's appeal was erroneously dismissed, *see Shadburne–Vinton v. Dalkon Shield Claimants Trust*, 60 F.3d 1071, 1073 (4th Cir.1995), upon motion, her case was reinstated in this Court. The Trust thereafter filed a motion for judgment on the pleadings, attacking the constitutionality of those provisions of the Oregon IUD legislation which purported to revive claims extinguished by the prior statute of repose. *Shadburne*, 851 F.Supp. at 713. During argument on this motion, Judge Kaufman raised the question of whether the Court had

jurisdiction to decide this issue in light of the dismissal of Shadburne's appeal. *Id.* at 713–14. Proceedings consequently were stayed until early 1994, when the Fourth Circuit determined that Shadburne's appeal had been dismissed in error. The Fourth Circuit subsequently recalled its mandate, and remanded Shadburne's case back to the district court. *Id.* at 714. It is critical to keep in mind the posture of the case at this point. The original suit filed by Shadburne against Robins was, and continuously had been from its inception, pending, and there had never been a final judgment entered against the plaintiff. This distinction is of foremost importance in understanding the difference between *Shadburne* and the present case.

On remand, Judge Kaufman agreed with the Trust, and held that the Oregon IUD legislation ran afoul of the Fourteenth Amendment's Due Process Clause. In reaching this conclusion, he noted that the Supreme Court had made a distinction between retroactive enlargement of statutes of limitation, which affected only remedies available to the litigants, and statutes of ultimate repose, which affected liability, "upholding the former while refusing to uphold the latter." *Id.* Moreover, Judge Kaufman found that the Fourth Circuit had embraced the distinction between statutes of limitation, which were procedural, and statutes of repose, which were substantive. *Id.* at 715. Based upon this precedent, the Court concluded that insofar as the Oregon IUD legislation retroactively enlarged the original statute of repose—thereby reviving claims which would otherwise have been time-barred—it deprived the defendant of a property interest without due process. *Id.* at 717. Accordingly, finding that Shadburne's claims were untimely under the Oregon statute of repose, Judge Kaufman granted the Trust's motion on the pleadings. *Id.* Shadburne appealed.

The Fourth Circuit reversed, concluding that for purposes of analyzing the constitutionality of retroactive legislation, statutes of limitation and statutes of repose were to be treated the same. *Shadburne–Vinton v. Dalkon Shield Claimants Trust*, 60 F.3d 1071, 1074 (4th Cir.1995). Moreover, the court found that the Supreme Court cases

relied upon by Judge Kaufman were outdated, and that based upon more recent Supreme Court precedent, the Due Process Clause allowed "retroactive application of either federal or state statutes as long as the statute serves a legitimate legislative purpose that is furthered by rational means." *Id.* at 1076. The Oregon IUD legislation met this rational basis test, the Fourth Circuit held, and therefore did not violate due process. *Id.* at 1077.

## B. The *Turner Elkhorn* Trilogy

The cornerstone of Shadburne is a trilogy of decisions from the Supreme Court which indicate that merely because legislation retroactively upsets a litigant's economic expectations it is not unconstitutional. *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976); *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984); *General Motors Corp. v. Romein*, 503 U.S. 181, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). In reviewing these cases, it is clear that they involved legislative enactments materially dissimilar from the one at issue here—legislation which purports to retroactively set aside the final judgment of a court of competent jurisdiction which has finally resolved the rights of the litigants.

In *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752, (1976), for example, the Court held that provisions of the Federal Coal Mine Health and Safety Act of 1969 which required that coal mine operators compensate former employees for injuries related to black lung disease, did not offend due process, even though these employees may have terminated work in the mining industry before the Act was passed. The Court stated that:

> It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.

*Id.* at 15, 96 S.Ct. at 2892. The Court added that its cases had made it clear that the mere fact that legislative enactments may have retroactive effect did not make them unconstitutional, and that "legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations." *Id.* at 16, 96 S.Ct. at 2893.

In the second case, *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984), the Court found that application of the withdrawal liability provisions of the Multi–Employer Pension Plan Amendments Act of 1980 to employers who withdrew from pension plans during the five-month period prior to the statute's enactment did not violate the Due Process Clause of the Fifth Amendment. The Court observed that, analogous to the legislation in *Turner Elkhorn*, the legislation here focused on matters of national economic policy, for which the courts had traditionally afforded the enacting legislative body "strong deference." *Id.* at 729, 104 S.Ct. at 2717–18. The Court consequently concluded that if such legislation is supported by a legitimate legislative purpose, furthered by a rational means, it does not offend due process, even if it readjusts rights and burdens and upsets otherwise settled expectations. *Id.*[7]

---

7. The *Turner Elkhorn* and *Pension Benefit Guaranty Corp.* Courts relied upon five identical cases for the principle that legislation readjusting the rights and burdens of parties is not unlawful solely because it upsets otherwise settled expectations. None of these cases dealt with the issue presented in this case—a legislative enactment passed, in part, for the specific purpose of invalidating final judgments which fixed the rights of the litigants with respect to a particular dispute. *See Fleming v. Rhodes*, 331 U.S. 100, 67 S.Ct. 1140, 91 L.Ed. 1368 (1947) (holding that a federal act extending wartime rent control limits permitted federal courts to issue injunctions to prevent future evictions of tenants from properties owned by landlords who had obtained state court judgments of eviction during the hiatus between the expiration of the original rent control legislation and its extension); *Carpenter v. Wabash Ry. Co.*, 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940) (holding that changes in the bankruptcy law enacted while judgment was on appeal controlled the outcome of the case, and required a reversal of the judgment even though it properly was entered by the trial court based on the law in existence at that time); *Norman v. Baltimore & Ohio R.R. Co.*, 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935) (holding that federal legislation which rendered unenforceable provisions in con-

Finally, in *General Motors Corporation v. Romein*, 503 U.S. 181, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992), the Court held that a Michigan statute which had the effect of requiring General Motors to repay workers' compensation benefits which that company had withheld in reliance on an earlier version of the workers' compensation law did not violate the Contract Clause or the Due Process Clause. Although retroactive legislation can have the effect of interfering with "closed transactions," the Court noted, this result is not alone sufficient to render the law unconstitutional, provided it serves a legitimate legislative purpose which it furthers by a rational means. *Id.* at 191, 112 S.Ct. at 1112.

Consequently, the *Turner Elkhorn* trilogy of cases relied upon by the Fourth Circuit in *Shadburne* did not address the constitutionality of legislative enactments which were passed for the very purpose of setting aside final judgments previously issued by courts of competent jurisdiction. Indeed, in *Shadburne*, this was not an issue as Shadburne's case was pending on appeal when the Oregon IUD legislation was passed, and thus, a final judgment had not been entered. The distinction is critical. As next will be seen, there is an equally venerable line of cases which hold that once the rights and liabilities of a litigant have been established by the final judgment of a court of competent jurisdiction, that judgment vests property rights in the prevailing party, and legislative enactments passed thereafter which attempt to retroactively invalidate these judgments are unconstitutional.

## C. The Vested Rights Doctrine

The "vested rights doctrine" or "adjudicated rights doctrine" "recognizes that rights fixed by judgment are, in essence, a form of property over which legislatures have no

greater power than any other." *Georgia Association of Retarded Citizens v. McDaniel*, 855 F.2d 805 at 810 (11th Cir.1988). The doctrine's origin is commonly traced to the Supreme Court's decision nearly a century ago in *McCullough v. Commonwealth of Virginia*, 172 U.S. 102, 19 S.Ct. 134, 43 L.Ed. 382 (1898). There the Court struck down as unconstitutional an act by the General Assembly of Virginia repealing earlier legislation which gave commonwealth taxpayers final judgments in the form of tax refunds. The Court stated:

> At the time the judgment was rendered in the circuit court of the City of Norfolk the act of 1882 was in force, and the judgment was rightfully entered under the authority of that act. The writ of error to the court of appeals of the state brought the validity of that judgment into review, and the question presented to the court was whether, at the time it was rendered, it was rightful or not. If rightful, the plaintiff therein had a vested right, which no state legislation could disturb. It is not within the power of a legislature to take away rights which have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb rights created thereby ceases.

*Id.* at 123–24, 19 S.Ct. at 142. *See also Hodges v. Snyder*, 261 U.S. 600, 603, 43 S.Ct. 435, 436, 67 L.Ed. 819 (1923) ("[T]he private rights of parties which have been vested cannot be taken away by subsequent legislation, but must be thereafter enforced by the court regardless of such legislation."). *McCullough* remains sound law. *Plyler v. Moore*, 100 F.3d 365, 371 (4th Cir.1996); *Johnston v. Cigna Corporation*, 14 F.3d 486, 491–92 (10th Cir.1993).

tracts requiring payment in gold coin was a constitutional exercise of Congress' power to create a money system, despite its effect of invalidating certain provisions of otherwise enforceable contracts); *Home Bldg. & Loan Assn. v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934) (upholding Minnesota legislation passed during the depression which gave state courts power to enter equitable relief to prevent foreclosure of mortgages and extend periods of redemption against Contract Clause, due process and equal

protection challenges); *Louisville & Nashville R.R. Co. v. Mottley*, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297 (1911) (on appeal of state court judgment, ruling that federal statute prohibiting interstate carriers from issuing passes for railroad transportation for compensation other than its published rates rendered unenforceable a settlement between personal injury claimants and railroad, under which railroad agreed to issue free passes for rail travel to plaintiffs for life in return for release).

Significantly, the vested rights doctrine has two distinct, though interrelated components. On one hand, "[t]he doctrine has a due process component premised upon the acknowledgment that once rights are fixed by judgment, they are a form of property over which the legislature has no greater power than it has over any other form of property." *Johnston,* 14 F.3d at 490. On the other, the doctrine recognizes that "[i]n cases *involving Congress* and the federal judiciary, the vested rights doctrine also has a separation of powers component which prevents Congress from sitting as a 'court of errors' with the power to suspend and revise final judgments of the federal courts." *Id.* at 490–91 (emphasis added). *See also Axel Johnson Inc. v. Arthur Andersen & Co.,* 6 F.3d 78, 83 (2d Cir.1993) ("Apart from protecting the property interests of prevailing parties, in cases involving congressional interference with federal court judgments, the vested rights doctrine has a separation of powers component which limits congressional review of judicial actions."). Where, as in this case, the legislative act attacked as unconstitutional is a state law which assertedly interferes with a final federal judgment, it is due process, rather than federal separation of powers concerns, that is obviously implicated.[8]

An important feature of the vested rights doctrine is that it applies only to final judgments, meaning after the "case has completed its journey through the appellate process" and "the availability of appeal is exhausted, and the time for a petition for certiorari has elapsed or the petition has been denied." *Johnston,* 14 F.3d at 489–90, n. 4. *See also Johnson,* 6 F.3d at 84 ("[A] case remains [pending] and open to legislative alteration, so long as an appeal is pending or the time for filing an appeal has yet to lapse."). It is precisely this factor which distinguishes the present case—where a final, unreviewable judgment was entered prior to the effective date of the Oregon IUD legislation—from the Fourth Circuit's decision in *Shadburne*

where the case was pending on appeal when the Oregon IUD legislation was passed. Indeed, it is recognized that if a law changes while a case is on appeal, and the law as changed contains a retroactive date which impacts the case on appeal, the appellate court must apply the newly enacted law to the case, even if doing so would change the outcome of a case properly decided under the law in effect at the time the trial court entered judgment. *Johnson,* 6 F.3d at 84.

### D. *Plaut v. Spendthrift Farm*

The leading modern case to address the scope of the vested rights doctrine in the context of the retroactive legislation is *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). Here the Supreme Court struck down as unconstitutional provisions of § 27A(b) of the Securities Exchange Act of 1991 which had the purported effect of reinstating civil actions against security fraud defendants which had been previously dismissed as time-barred. *Id.* at 214–16, 115 S.Ct. at 1451. The plaintiffs in *Plaut* had not noted an appeal from the adverse judgment of the district court. Thus, as in this case, the effect of the retroactive provisions of § 27A(b), was to reopen of a final, unappealable judgment. *Id.*

The security fraud defendants in *Plaut* argued that retroactive application of § 27A(b) violated both the separation of powers doctrine as well as the Due Process Clause of the Fifth Amendment. *Id.* at 216–18, 115 S.Ct. at 1452. The Court specifically declined to address the due process challenge, however, noting that "if correct [it] might dictate a similar result in a challenge to state legislation under the Fourteenth Amendment, [and that] the former [separation of powers challenge] is the narrower ground for adjudication of the constitutional questions in the case...." *Id.* at 217, 115 S.Ct. at 1452. Accordingly, *Plaut* does not squarely resolve the present case as state legislation is implicated here. *See Johnston,* 14 F.3d at 491 ("In cases involving *Congress*

---

8. The parties have not cited, and I have not located, authority which analyzes the vested rights doctrine from the perspective of the Supremacy Clause. Although it is tempting to consider whether the Supremacy Clause provides an

independent constitutional basis for resolving this case, I decline to embark upon such an untested analysis, when there is an accepted alternative constitutional basis readily available governing the outcome here.

*and the federal Judiciary,* the vested rights doctrine also has a separation of powers component which prevents *Congress* from sitting as a "court of errors" with the power to suspend or revise final judgments of the federal courts." (emphasis added)); *Johnson,* 6 F.3d at 83 ("in cases involving *congressional interference* with federal court judgments, the vested rights doctrine has a separation of powers component which limits *congressional review* of judicial actions." (emphasis added)). Nevertheless, *Plaut* remains instructive in determining how the due process component of the vested rights doctrine should be applied, and provides strong support for the conclusion that, under the Due Process Clause, retroactive application of the Oregon IUD legislation to reinstate the Luxfords' claims is unconstitutional. *See Plyler,* 100 F.3d at 375 (noting that "[t]he vested rights doctrine is analogous to the separation-of-powers rule that Congress may not mandate the reopening of final judgments"); *Gavin v. Branstad,* 122 F.3d 1081, 1090–91 (8th Cir.1997) (same); *Benjamin v. Jacobson,* 124 F.3d 162, 175–76 (2d Cir.1997) (same).

Writing for the Court, Justice Scalia began the analysis in *Plaut* with a historical overview of the problems which had developed in colonial times when legislative bodies "intermingled" legislative and judicial powers by passing legislation which mandated new trials in cases previously decided. *Plaut,* 514 U.S. at 218–20, 115 S.Ct. at 1453. The Court next made it clear that when Congress enacts retroactive legislation, appellate courts are obligated to apply the legislation to cases pending on appeal, even if the effect is to revise a judgment rendered by the trial court prior to the effective date of the new law. *Id.* at 226–28, 115 S.Ct. at 1457. *Plaut,* however, is unambiguous in its condemnation of legislative enactments with retroactive effective dates being used to reopen final, unappealable judgments:

> But a distinction between judgments from which all appeals have been forgone or completed, and judgments that remain on appeal (or subject to being appealed), are implicit in what Article III creates: not a batch of unconnected courts, but a judicial department composed of "inferior Courts" and "one supreme Court." Within that hierarchy, the decision of an inferior court is not (unless the time for appeal has expired) the final word of the department as a whole. It is the obligation of the last court in the hierarchy that rules on the case to give effect to Congress latest enactment, when that has the effect of overturning the judgment of an inferior court, since each court, at every level, must decide a case according to existing laws.... Having achieved finality, however, a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable to that very case was something other that what the courts said it was.

*Id.* at 227, 115 S.Ct. at 1457.

The impropriety of a legislative effort to retroactively alter a valid, final judgment is not diminished when it is the act of a state legislature as opposed to Congress. That the Supreme Court has directly condemned this practice by Congress under the separation of powers doctrine provides clear guidance that the same act by a state legislature equally offends the Constitution. The result is improper, by whatever constitutional doctrine is available to reach it. The fact that in *Plaut* the Supreme Court chose not to address the question broadly under both the Due Process Clause and the separation of powers doctrine surely cannot be interpreted as intimating that under a due process analysis a different result should obtain. Rather, the Court's unwillingness to address the due process issue should be viewed as a function of the Court's long standing practice of selecting the narrowest constitutional ground for resolving a case. *Id.* at 216–18, 115 S.Ct. at 1452 (*citing Ashwander v. TVA,* 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring)).

## E. Constitutionality of the Oregon IUD Legislation

■ In this case, it cannot be credibly disputed that the 1983 judgment against Ms. Luxford became final when it was not timely

appealed, and that this judgment is an adjudication on the merits for the purposes of the vested rights doctrine. *Plaut*, 514 U.S. at 226–28, 115 S.Ct. at 1457. A review of the complaint in that action reveals that the claims filed by Ms. Luxford against Robins are virtually identical to the claims brought in this case.[9]

The Oregon IUD legislation cannot now resurrect these claims consistent with the Fourteenth Amendment. To do so, would not merely upset a litigant's expectations, but deprive the defendant of a protected property right without due process of law. Thus, to the extent that the Oregon IUD legislation purports to reinstate the Luxfords' claims despite the entry of the 1983 final judgment against them, this legislation is unconstitutional. *Johnston*, 14 F.3d at 490–93; *Georgia Ass'n of Retarded Citizens*, 855 F.2d at 812; *Plaut v. Spendthrift Farm, Inc.*, 789 F.Supp. 231, 234 (E.D.Ky.1992). *See also Plyler*, 100 F.3d at 371 ("Of course a judgment at law is immune to subsequent changes in the law.").

The *Turner Elkhorn* case and its progeny, including the Fourth Circuit's decision in *Shadburne*, do not suggest a different result. Unquestionably, these cases hold that even "settled expectations" of parties regarding the "burdens and benefits" of economic life are subject to retroactive change by legislation when it is passed to achieve a legitimate goal and is accomplished by a rational means. But the vested rights doctrine teaches that the "settled expectations" of parties exist on a continuum. At one end, is the expectation that economic burdens and benefits will remain as they are simply because nothing has occurred to upset the status quo. At the other end, is the expectation that a final judgment has fixed the rights and liabilities of the parties. As the Supreme Court made clear in *Plaut*, at any point in the continuum up to the entry of a final judgment, a state legislature, or Congress, is free to retroactively alter the settled expectations of par-

ties, provided the legislation is supported by a rational basis. Once a judgment becomes final, however, it is a form of property. *See State of Louisiana v. Mayor and Administrators of the City of New Orleans*, 109 U.S. 285, 291, 3 S.Ct. 211, 215, 27 L.Ed. 936 (1883) (Bradley J., concurring) ("A judgment is as much an article of property as anything else that a party owns."). At this point in the continuum, to permit a legislative body to retroactively set aside the judgment of a federal court is constitutionally impermissible, whether viewed from the perspective of the separation of powers doctrine for congressional acts, or alternatively, the Due Process Clause of the Fourteenth Amendment for the acts of state legislatures.

## CONCLUSION

For these reasons, accepting all of the plaintiffs' allegations as true, and drawing all justifiable inferences therefrom in their favor, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), I find that 1983 judgment entered against Ms. Luxford in the Oregon district court bars relitigation of the plaintiffs' present claims, and that the Oregon IUD legislation cannot constitutionally reinstate these claims. The defendant's Motion for Summary Judgment is accordingly GRANTED. A separate Order shall issue.

---

9. By letter to counsel dated July 23, 1997 I requested a copy of the complaint filed by Ms. Luxford in the Oregon federal litigation. By letter dated August 1, 1997, counsel for the defendant supplied me with a copy of that complaint, and copied counsel for the plaintiff with the letter and enclosure. At oral argument on August 18, 1997, counsel for the plaintiff acknowledged that the Oregon complaint, made a court exhibit at the argument hearing, was authentic.