M.T. v Yeshiva Univ. (2026 NY Slip Op 00218)

M.T. v Yeshiva Univ.

2026 NY Slip Op 00218

Decided on January 15, 2026

Appellate Division, First Department

MOULTON, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 15, 2026
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels
Peter H. Moulton Saliann Scarpulla Lizbeth González

Index No. 950111/19|Appeal No. 5010|Case No. 2024-02719|

[*1]M.T., et al., Plaintiffs-Respondents,
vYeshiva University, et al., Defendants-Appellants, Pat Doe 1-30, etc., et al., Defendants.

Certain defendants appeal from an order of the Supreme Court, New York County (Alexander M. Tisch, J.), entered April 8, 2024, which, to the extent appealed from as limited by the briefs, denied the motion of defendants Yeshiva University, Marsha Stern Talmudical Academy-Yeshiva University High School for Boys, and Chaye Lamm Warburg and Joshua Lamm, as Executors of the Estate of Norman Lamm and Rabbi Robert Hirt to dismiss the complaint pursuant to CPLR 3211(a)(5), and denied the motion of defendant Rabbi Robert Hirt to dismiss the complaint against him pursuant to CPLR 3211(a)(7).

Seyfarth Shaw LLP, New York (Matthew C. Catalano, Karen Y. Bitar and Gershon Akerman of counsel), for Robert Hirt, appellant.
Kevin T. Mulhearn, P.C., Orangeburg (Kevin T. Mulhearn of counsel), for respondents.
The Law Offices of Jesse Capell, Brooklyn (Jesse Capell of counsel), for M.T. and John Doe 6, respondents.

MOULTON, J. 

This action was commenced under the Child Victims Act (the CVA), which upon enactment in 2019 created a revival window for victims of child sexual abuse to file time-barred civil lawsuits in New York (see CPLR 214-g). The CVA expressly provides that "dismissal of a previous action, ordered before the effective date of this section, on grounds that such previous action was time barred . . . shall not be grounds for dismissal of a revival action pursuant to this section" (id.).
As described at greater length below, plaintiffs allege that they were sexually abused by administrators, teachers, and other employees while students at defendant Marsha Stern Talmudical Academy-Yeshiva University High School for Boys (YU High School). More than a decade ago, well before the passage of the CVA, 33 of the plaintiffs in this action brought two sequential federal lawsuits in the Southern District of New York based on the same facts alleged in the instant complaint. In district court, these plaintiffs asserted state law negligence claims, as well as other state law and federal claims. The first of those federal actions was dismissed in 2014 in relevant part on state statute of limitations grounds. That dismissal was affirmed by the Second Circuit, and the United States Supreme Court denied certiorari. In 2015, plaintiffs brought the second action asserting virtually the same facts and causes of action. That action was dismissed on the basis of res judicata. That decision was also affirmed on appeal.
The central question raised by this appeal is whether the instant lawsuit is foreclosed by "vested rights" that defendants assert they have in the two federal judgments in their favor. Supreme Court rejected that argument. We now affirm.
Background
In 2012, following an exposÉ in The Jewish Daily Forward newspaper, Yeshiva University's (YU) Board of Trustees and the Board of Directors of YU High School engaged the law firm of Sullivan and Cromwell, LLP to investigate and issue a report. The report, which plaintiffs submitted in opposition to defendants' motion to dismiss, concluded that multiple incidents of sexual and physical abuse had been carried out by several individuals in positions of authority at the school, before and after members of the administration had been made aware of the conduct. In opposition to defendants' motion to dismiss, plaintiffs also submitted a 2013 resignation letter from Norman Lamm, President of YU High School. In that letter, Lamm conceded that "inappropriate actions by individuals at Yeshiva were brought to [his] attention" and that while he responded in a way that he believed to be correct at the time, his response "now seems ill conceived."
In 2013, 33 of the 47 plaintiffs in this action brought Twersky v Yeshiva University (993 F Supp 2d 429 [SD NY 2014], affd 579 Fed Appx 7 [2d Cir 2014], cert denied 575 US 935 [2015] [hereinafter Twersky I]) asserting both state and federal claims arising from their alleged abuse. The state law claims sounded in fraud, negligence, and violation of General Business Law §§ 349 and 350. Plaintiffs also asserted claims under federal law for violation of Title IX of the Education Amendments Act of 1972 (20 USC § 1681 et seq.).
Defendants moved to dismiss the complaint as time-barred. Plaintiffs cross-moved to amend their complaint. The district court in Twersky I dismissed the claims asserted under state law as time-barred by New York's statutes of limitations, denied the motion to amend the complaint as futile because the state law claims were time-barred, and dismissed the federal Title IX claims as untimely, borrowing from New York's statute of limitations but applying federal common law to determine the date of accrual. The Second Circuit affirmed, and the United States Supreme Court denied certiorari. In 2015, the 33 plaintiffs brought a second action based on essentially the same facts as Twersky I by filing a complaint in Supreme Court, New York County. Defendants successfully removed that action to federal court. The federal court dismissed Twersky v Yeshiva University (112 F Supp 3d 173 [SD NY 2015], affd 637 Fed Appx 48 [2d Cir 2016 [hereinafter Twersky II]) based on the doctrine of res judicata, given that Twersky I already held that the claims were time-barred. The Second Circuit affirmed.
The instant action was brought shortly after the enactment of the CVA. In their amended complaint, plaintiffs allege that they were subjected to repeated sexual and physical abuse at YU High School from the 1950s through 1986. Plaintiffs sued YU and Members of its Board of Trustees (Pat Doe 1-30), YU High School and Members of its Board of Trustees (James Doe 1-30), Chaye Lamm Warburg and Joshua Lamm, as Executors of the Estate of Norman Lamm (the Estate of Lamm), and Rabbi Robert Hirt. Plaintiffs asserted causes of action for negligent supervision, negligent retention, and negligent failure to provide a safe and secure environment.
Defendants moved to dismiss plaintiffs' amended complaint pursuant to CPLR 3211(a)(5), (7) and (11). Plaintiffs opposed defendants' motion. By order entered April 8, 2024, Supreme Court granted the motion solely to the extent of dismissing the Members of the Board of Trustees of YU and the Board of Directors of YU High School on the ground that they were entitled to qualified immunity under N-PCL 720-a. The remaining defendants brought this appeal.
In this appeal, YU, YU High School, and the Estate of Lamm (collectively, the Yeshiva defendants) contend that Supreme Court erred in rejecting their as-applied challenge to the CVA based on the federal doctrine of "vested rights," an argument that Hirt incorporates by reference in his separately filed brief. According to the Yeshiva defendants, they obtained a constitutionally protected vested property right in the final federal judgments in Twersky I and Twersky II against 33 of the 47 plaintiffs in this action. That vested property right, they argue, cannot be abrogated by the CVA without violating the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and the Supremacy Clause.
In his appellate brief, Hirt additionally argues that Supreme Court erred in declining to dismiss plaintiffs' amended complaint against him because it lacked specific facts indicating that he had actual or constructive notice of the alleged abusers' propensities and, therefore, failed to state a cause of action.Discussion
According to defendants, the claims of the relevant 33 plaintiffs are barred by defendants' vested rights in the two judgments in Twersky I and II. The Yeshiva defendants concede that, absent the two judgments, the CVA does not violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution.[FN1]
The federal doctrine of vested rights has roots in common and even natural law. These antecedents, and the doctrine's sporadic deployment in the modern era, contribute to its ill-defined parameters. This much is clear: the doctrine of vested rights is essentially a check on legislative power to alter certain private rights recognized in final court judgments. Some commentators describe the doctrine as animated in this country by the reaction of the formerly colonized and newly free United States, to acts of Parliament that abrogated private rights in the 13 colonies (see Adam J. MacLeod, Of Brutal Murder and Transcendental Sovereignty: The Meaning of Vested Private Rights, 41 Harv JL & Pub Policy 253, 258-259 [2018]). The doctrine has a federal separation of powers component, which the Yeshiva defendants concede is inapplicable here because this case "involves a federal judgment attempted to be abrogated by a state legislature and would not, therefore, implicate separation of powers." Instead, defendants emphasize the due process component of the doctrine.
The case most often cited by modern cases for articulating the doctrine is McCullough v Virginia (172 US 102 [1898]). There, a taxpayer prevailed in a Virginia state court against the State of Virginia, obtaining a judgment for a tax refund (id.). Before the judgment was executed, the Virginia legislature repealed the legislation that had entitled the taxpayer to a refund (id.). McCullough held that the United States Constitution barred the state legislature from repudiating the state court judgment, explaining that "[it] is not within the power of the legislature to take away rights which have been once vested by a judgment," and that when "passed into judgment the power of the legislature to disturb the rights created thereby ceases" (id. at 123-124). McCullough, its progeny, and earlier cases establish that a final money judgment gives rise to a vested due process property right, which entitles the judgment creditor to the same constitutional protections afforded other forms of property (see e.g. Pennsylvania v Wheeling & Belmont Bridge Co., 59 US 421, 431 [1855] ["If the remedy in this case had been an action at law, and a judgment rendered in favor of the plaintiff for damages, the right to these would have passed beyond the reach of the power of congress"]; Benjamin v Jacobson, 124 F3d 162, 176 [2d Cir 1997] ["It is well-settled that a final money judgment creates a 'vested right' and hence a constitutionally protected property interest"]). A judgment lien against real property also creates a property interest protected by the Fourteenth Amendment because it secures the judgment creditor's ability to collect a money judgment and "like other common property interests, a judgment lien can be freely bought, sold, and assigned" (1256 Hertel Ave. Assoc., LLC v Calloway, 761 F3d 252, 263 [2d Cir 2014]).
In describing their purported property right, the Yeshiva defendants argue that they are not asserting a property right in "any previously-applicable statute of limitations, but rather in the final federal judgments that they received." Indeed, if the final federal judgments, standing alone, do not vest defendants with a constitutionally protected property right, the argument fails because, as the Yeshiva defendants concede, "[o]f course a statute of limitations itself does not create property rights" (see e.g. Chase Sec. Corp. v Donaldson, 325 US 304, 311-312 [1945] ["where lapse of time has not invested a party with title to real or personal property, a state legislature, consistently with the Fourteenth Amendment, may repeal or extend a statute of limitations, even after right of action is barred thereby, restore to the plaintiff his remedy, and divest the defendant of the statutory bar"]; Campbell v Holt, 115 US 620, 629 [1885] ["We are unable to see how a man can be said to have property in the bar of the statute"]; Tanges v Heidelberg N. Am., 93 NY2d 48, 55 [1999] ["The expiration of the time period prescribed in a Statute of Limitations does not extinguish the underlying right, but merely bars the remedy"]; Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig., 30 NY3d 377, 406 [2017] [Rivera, J., concurring] [there is no "separate vested property right" under the Due Process Clause of the Fourteenth Amendment or New York's more expansive Due Process Clause based on "the hope of avoiding litigation," considering that a defendant "has no fundamental right to a statute of limitations in perpetuity"]).
The Yeshiva defendants' premise, that the final federal judgments vested them with a constitutionally protected property right, misconstrues the doctrine of vested rights. While a judgment is certainly the vehicle for vesting private property rights, it is not the property right by and of itself. Notably, McCullough was premised on the existence of not only a judgment, but a separate property right (a tax refund) associated with the judgment, which became inviolable "once vested by a judgment" (McCullough, 172 US at 123; see also Hodges v Snyder, 261 US 600, 603 [1923] ["the private rights of parties which have been vested by the judgment of a court cannot be taken away by subsequent legislation, but must be thereafter enforced by the court regardless of such legislation"]). Thus, it is only "[w]hen [the private rights of parties] have passed into judgment [that] the right becomes absolute, and it is the duty of the court to enforce it" (Pennsylvania v Wheeling & Belmont Bridge Co., 59 US at 431 [1855]).
Because the United States Constitution "protects rather than creates property interests, the existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law" (Phillips v Washington Legal Found., 524 US 156, 164 [1998] [internal quotation marks omitted]). It is only after that determination is made that the "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause" (Town of Castle Rock v Gonzalez, 545 US 748, 757 [2005] [internal quotation marks and emphasis omitted]).
Defendants do not identify any property right under New York law that is associated with the judgments. The judgments do not involve title to real or personal property (see Chase Sec. Corp., 325 US at 316; see also Campbell, 115 US at 628 ["[w]e understand very well what is meant by a vested right to real estate, to personal property, or to incorporeal hereditaments" but "[w]e certainly do not understand that a right to defeat a just debt by the statute of limitations is a vested right, so as to be beyond legislative power in a proper case"]). Defendants did not obtain a money judgment or a judgment lien. Moreover, the final federal judgments cannot "be freely bought, sold, and assigned" like other common property interests (1256 Hertel Ave. Assoc., LLC, 761 F3d at 263). Notably, the judgments have no value to anyone except defendants, and that value is based on "the hope of avoiding litigation" which is not a property interest (Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig., 30 NY3d at 406 [Rivera, J., concurring]).
To support their position that the final federal judgments, standing alone, create an inviolable property interest, defendants rely primarily on Luxford v Dalkon Shield Claimants Trust (978 F Supp 221 [D Md 1997]).[FN2] However, Luxford is not persuasive.
In Luxford, the defendant obtained a final federal court judgment in 1983 dismissing the plaintiffs' case as barred by an Oregon statute of repose (id.). After the State of Oregon passed legislation reviving IUD claims, the plaintiffs sued again (id.). Relying on the decision in Plaut v Spendthrift Farm, Inc. (514 US 211 [1995]), Luxford held that the retroactive application of the Oregon IUD legislation to reinstate the plaintiffs' previously dismissed claims violated the Due Process Clause of the Fourteenth Amendment (Luxford, 978 F Supp 228-229). Although Luxford acknowledged that Plaut did not "resolve" the issue before it, it found Plaut "instructive" (Luxford, 978 F Supp at 227-228). Plaut, however, is inapt. There, the United States Supreme Court held that Congress violated the constitutional principle of separation of powers by passing federal legislation "retroactively commanding the federal courts to reopen final judgments" (Plaut, 514 US at 219). As the Yeshiva defendants concede, that principle, which protects the independence of the three coordinate branches of the federal government (see Mistretta v United States, 488 US 361, 380 [1989]), is inapplicable here. Unlike Plaut, this case involves state legislation purportedly abrogating federal judgments - not federal legislation abrogating federal judgments.
Absent the separation of powers component present in Plaut, the Yeshiva defendants are compelled to argue that "[t]he same underlying U.S. Constitutional principles as delineated in Plaut also animate the federal judgment vs. state legislation analysis here, albeit under the vested rights doctrine rather than separation of powers." However, Plaut never reached the issue of whether Congress violated the Due Process Clause of the Fifth Amendment by passing legislation retroactively compelling the federal courts to reopen final judgments (Plaut, 514 US at 217-218). More importantly, the same underlying constitutional principles delineated in Plaut do not animate the analysis here. Plaut is rooted solely on the concern, not present here, that "Congress has exceeded its authority by requiring the federal courts to exercise '[t]he judicial Power of the United States,' U.S. Const., Art. III, § 1, in a manner repugnant to the text, structure, and traditions of Article III" (id.).
Throughout their briefs, the Yeshiva defendants argue that the New York legislature cannot "override," "overturn," or "abrogate" defendants' vested rights in the final federal judgments or pass a law to "undo" the judgments. Absent a constitutionally protected vested property right in those judgments, this argument is best characterized as one made under the Supremacy Clause, not the federal doctrine of vested rights. However, there is no Supremacy Clause violation in this case.
The Supremacy Clause provides that the "Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding" (US Const, art VI, cl 2). Thus, for example, state legislators, executives, and judicial officers in Arkansas could not nullify federal court desegregation orders based on Brown v Board of Educ. (347 US 483 [1954]) given that the Equal Protection Clause in the Fourteenth Amendment "is the supreme law of the land" (Cooper v Aaron, 358 US 1, 18 [1958]). A state law that conflicts with a federal law also violates the Supremacy Clause (see McCulloch v Maryland, 17 US 316, 424 [1819] [the Maryland legislature violated the Supremacy Clause by imposing a tax on the Bank of the United States which was incorporated by the act of Congress and "part of the supreme law of the land"]).
Here, the Yeshiva defendants do not identify any conflict between the CVA and "the supreme Law of the Land." They assert, in conclusory fashion, that "the federal supremacy clause also bars [the 33 plaintiffs' claims], as federal court orders and judgments prevail over conflicting state laws." They also cite to Luxford's statement that "it is tempting to consider whether the Supremacy Clause provides an independent constitutional basis for resolving this case" (Luxford, 978 F Supp at 227 n8). However, the court in Luxford "decline[d] to embark upon such an untested analysis" (id.)
In any event, the Supremacy Clause does not provide an independent basis for finding that the CVA, as applied to defendants, is unconstitutional. The CVA does not conflict with the Due Process Clause of the Fourteenth Amendment because the final federal judgments did not vest defendants with a constitutionally protected property right. The CVA is consistent with the Due Process Clause of the Fourteenth Amendment inasmuch as "a state legislature, consistently with the Fourteenth Amendment, may repeal or extend a statute of limitations, even after right of action is barred thereby, restore to the plaintiff his remedy, and divest the defendant of the statutory bar" (Chase Sec. Corp., 325 US at 311-312). Nor does the CVA, a New York revival statute enacted by the New York legislature governing claims brought in New York courts, conflict with federal law.
Defendant Hirt argues additionally that the complaint fails to state a cause of action against him. This argument fails. Plaintiffs' allegations that Hirt, within the scope of his authority as the Vice President of Administration and Professional Education at Rabbi Issac Elchanan Theological Seminary, a YU affiliate, knew or should have known of the alleged abusers' dangerous propensities, and either condoned or covered them up, is sufficient to withstand the motion to dismiss, especially considering that the alleged abuse occurred openly and over many decades (see G.T. v Roman Catholic Diocese of Brooklyn, N.Y., 211 AD3d 413, 413 [1st Dept 2022]; M.O. v Archdiocese of N.Y., 228 AD3d 583, 584 [1st Dept 2024]). The pleading is sufficient to put Hirt on notice of the claims against him, and he can seek amplification in a bill of particulars (see John Doe - 18126 v Young People's Chorus of N.Y. City, 238 AD3d 633, 634 [1st Dept 2025]). This is especially true given that "at [the] pre-answer stage of the litigation, such information is in the sole possession and control of the movant" (G.T., 211 AD3d at 413; see ARK265 Doe v Archdiocese of N.Y., 221 AD3d 422, 423 [1st Dept 2023]).
Accordingly, the order of the Supreme Court, New York County (Alexander M. Tisch, J.), entered April 8, 2024, which, to the extent appealed from as limited by the briefs, denied the motion of defendants Yeshiva University, Marsha Stern Talmudical Academy-Yeshiva University High School for Boys, and Chaye Lamm Warburg and Joshua Lamm, as Executors of the Estate of Norman Lamm and Rabbi Robert Hirt to dismiss the complaint pursuant to CPLR 3211(a)(5), and denied the motion of defendant
Rabbi Robert Hirt to dismiss the complaint against him pursuant to CPLR 3211(a)(7), should be affirmed, without costs.
Order, Supreme Court, New York County (Alexander M. Tisch, J.), entered April 8, 2024, affirmed, without costs.
Opinion by Moulton, J. All concur.
Manzanet-Daniels, J.P., Moulton, Scarpulla, González, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 15, 2026

Footnotes

Footnote 1: Defendants also invoke the Due Process Clause of the Fifth Amendment. However, the Fifth Amendment applies to the federal government whereas the Fourteenth Amendment applies to state governments (see Dusenbery v United States, 534 US 161, 167 [2002]).

Footnote 2: The Yeshiva defendants additionally argue that pursuant to the Federal Rules of Civil Procedure 41(b), Twersky I's dismissal was "on the merits" and with prejudice. Consequently, they claim a constitutionally protected "vested right in the finality of those federal judgments" distinct from "irrelevant" res judicata principles. However, whether a dismissal is on the merits and with prejudice is of no import, absent a vested, constitutionally-protected property right.